(86 South. 65)

**REPUBLIC IRON & STEEL CO. v. STATE. (3 Div. 456.)**

(Supreme Court of Alabama. June 5, 1920.)

1. **Mines and minerals ⬧87—Tonnage tax on mining coal and iron applies to miner not owning fee.**

Revenue Law 1919, § 361, schedules 66, 67, imposing a tonnage tax on coal and iron mined, applies to any firm, individual, or corporation engaged in the business of mining coal and iron ore, whether owning the fee in the land or not.

2. **Mines and minerals ⬧87—Tonnage tax on coal and iron ore held not a direct tax, because fixing the tax at a certain sum per ton.**

That the tonnage tax on coal or iron imposed by Revenue Law 1919, § 361, schedules 66, 67, fixes the tax at 2 cents per ton on the coal and 3 cents per ton on iron ore, does not render it a direct tax on the coal and ore, or prevent its being a privilege or license tax upon the occupation or business of mining.

3. **Licenses ⬧7(3) — Legislature, in levying license tax, must not discriminate between members of class.**

In the levy of a privilege or license tax the Legislature is not restricted as to the trades, businesses, or occupations which it may select, or the amount levied, so long as it does not discriminate between members of the same class, and the tax must not be so exorbitant as to prohibit or restrain or oppress a legitimate and useful trade, business, or occupation, as

---

⬧For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
[5] Ante, p. 381.　　　[1] Ante, p. 463.

distinguished from a certain class which, while tolerated, is recognized as being productive of disorder ·or injurious to the public.

**4. Constitutional law ⬳82 — Mines and minerals ⬳87—Tonnage tax on mining held not to violate Bill of Rights.**

The tonnage tax on the business of mining coal and iron ore, imposed by Revenue Law 1919, § 361, schedules 66, 67, does not violate the Bill of Rights, as depriving one engaged in mining business of his inalienable rights.

**5. Mines and minerals ⬳87—Payment of ad valorem tax on land held not to render privilege tax on mining unwarranted.**

That one who pays the privilege tax on mining coal and iron, imposed by Revenue Law 1919, § 361, schedules 66, 67, may also own the land from which the ore is taken, and also pay an ad valorem tax on the land, does not render the privilege tax an unwarranted charge for the use of his property.

**6. Licenses ⬳7(8)—Privilege tax may be imposed, regardless of tax on property.**

That property, once taxed, may be used in connection with business or occupation, directly or indirectly, does not prevent a privilege tax on the business or occupation.

**7. Constitutional law ⬳208(3) — Licenses ⬳7(6)—Privilege tax on mining, exempting wagon mines, held not discriminatory.**

Revenue Law 1919, § 361, schedules 66, 67, imposing a privilege tax on mining coal, and exempting wagon mines, is not invalid, as discriminatory, as Legislature can reclassify members of a general class.

**8. Mines and minerals ⬳87—Tonnage tax on "business of mining" held not limited to mining ore for sale on market.**

Revenue Law 1919, § 361, schedules 66, 67, imposing a license tax on mining coal and iron, applies to those ·engaged in the business of mining for profit, as distinguished from a personal or domestic use, and is not limited to those who mine coal and iron ore only for sale on the market (citing Words and Phrases, Second Series, Business).

**9. Mines and minerals ⬳87—Tonnage tax on mining may be imposed on one licensed as manufacturer.**

A miner of coal and iron *held* not exempted from the operations of Revenue Law 1919, § 361, schedules 66, 67, imposing a license tax on mining, because of a license as a manufacturer of iron.

Appeal from Circuit Court, Montgomery County; Wm. L. Martin, Judge.

Action by the State of Alabama against the Republic Iron & Steel Company to recover the tonnage tax on coal and iron. Judgment for the State and defendant appeals. Affirmed.

This appeal involves the constitutionality vel non of schedules 66 and 67 of section 361 of the license schedule to the Revenue Law of 1919, p. 419, and which schedules read as follows: -

"Schedule 66. *Mining Coal.*—Every person, firm, corporation, partnership, joint-stock company or association engaged in the business of operating a coal mine in this state shall pay to the state treasurer for the use of the state a license or privilege tax, by the twentieth day of each month, for the privilege of operating such coal mine during the current month in which such payment is due, in amount equal to two cents per ton on all coal mined during the last preceding month in which such mine was operated, according to the run of the mine, whether such mine be an open mine or an underground mine, but no such tax shall be paid to any county in the state, providing this shall not apply to wagon mines which do· not load said coal in or on railroad cars, boats or barges. Railroad rates shall govern in determining the amount of coal mined, provided. said coal is loaded in railroad cars.

"Schedule 67. *Mining Iron Ore.*—Every person, firm, corporation, partnership, joint-stock company or association engaged in the business of operating an iron ore mine in this state shall pay to the state treasurer for the use of the state a license or privilege tax, by the· twentieth day of each month, for the privilege of operating such iron ore mine during the current month in which such payment is due. in amount equal to three cents per ton on all iron ore mined during the last preceding month in which such mine was operated according to the run of the mine, whether such mine be an open mine or an underground mine, but no such tax shall be paid to any county in the state. ·Railroad rates shall govern in determining the amount of iron ore mined, provided said iron ore is loaded in railroad cars."

The points of attack made upon said ·act sufficiently appear in the opinion of the court, together with an abstract of the brief of counsel, which will be set out in the official publication of the cause.

Tillman, Bradley & .Morrow, of Birmingham, John H. Bankhead, Jr., of Jasper, and Percy, Benners & Burr, of Birmingham, for appellant.

Until they are mined, coal and iron ore are property only in a theoretical sense. Being incapable of use until they are mined, they do not become property in any real sense until they are mined, whether they be mined now or in a thousand years. The tax, being not only measured by, but predicated on, the act of converting the minerals as they lay in the ground into usable property, is inevitably on property. The tax is on nothing but the act of conversion, making personalty of realty.

The right to own things, without the right to use them, is a conception unknown to, and therefore without name in, the law. The word "property" includes, not only the thing, but the right to use and enjoy the thing. Dorman v. State, 34 Ala. 216, 221; Fruth v. Board of Affairs, 75 W. Va. 456, 84 S. E. 105, L. R. A. 1915C, 981, subd. 1, opinion; City of St. Louis v. Hill, 116 Mo..

527, 22 S. W. 861, 21 L. R. A. 226, 228; Western Union Co. v. State Board, 80 Ala. 273, 60 Am. Rep. 99; Ex parte Marshall (C. C.) 102 Fed. 324, 325; Ex parte Koser, 60 Cal. 210; Braceville Coal Co. v. People, 147 Ill. 71, 35 N. E. 62, 63, 22 L. R. A. 340, 37 Am. St. Rep. 206; Buchanan v. Warley, 245 U. S. 60, 38 Sup. Ct. 16, 62 L. Ed. 149, L. R. A. 1918C, 210, Ann. Cas. 1918A, 1201.

Coal and ore in place, whether owned separately from the fee or as a part of it, have been the subject of property taxes in this state since 1852, or earlier. To tax minerals through years as they lay in the ground, and then to tax the act of taking them out, is to tax them twice. Code of 1852, § 391, subd. 4; Code of 1867, § 434, subd. 2; Code of 1886, § 453, subd. 1; Revenue Act of 1919, p. 284, § 5, subd. (a).

The taxes levied by schedules 66 and 67 are taxes on property. There is no distinction in law, there being none in fact, between taxing a thing and taxing the enjoyment of that thing. Thompson v. McLeod, 112 Miss. 383, 73 South. 193, L. R. A. 1918C, 893, Ann. Cas. 1918A, 674; Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 580, 582, 15 Sup. Ct. 675, 39 L. Ed. 759, 819; Id., 158 U. S. 601, 637, 15 Sup. Ct. 912, 39 L. Ed. 1108; Sims v. Parish of Jackson, 22 La. Ann. 440; Covell v. Young, 11 Neb. 510, 9 N. W. 694; Pittsburgh, etc., R. R. v. Ohio, 49 Ohio St. 189, 30 N. E. 435, 16 L. R. A. 380; Brown v. Maryland, 12 Wheat. 419, 6 L. Ed. 678; State of Maryland v. Cumberland, etc., R. R. Co., 40 Md. 22, 51; Pittsburgh Ry. Co. v. City of Pittsburgh, 211 Pa. 479, 60 Atl. 1077, 1080; Scully v. People, 104 Ill. 349; State v. Lakeside Land Co., 71 Minn. 283, 73 N. W. 970; Fatjo v. Pfister, 117 Cal. 83, 48 Pac. 1012; Wheeler v. Weightman, 96 Kan. 50, 149 Pac. 977, L. R. A. 1916A, 846; State v. Moore, 12 Cal. 56; State v. Bengsch, 170 Mo. 81, 70 S. W. 710; In re Page, 60 Kan. 842, 58 Pac. 478, 47 L. R. A. 68.

The nature of the tax is to be determined by its effect. The name given by the Legislature is of no consequence. Crew Levick Co. v. Penn., 245 U. S. 292, 294, 38 Sup. Ct. 126, 62 L. Ed. 295; American Mfg. Co. v. St. Louis, 250 U. S. 463, 39 Sup. Ct. 522, 63 L. Ed. 1084; State v. Parker, 5 Ala. App. 240, 59 South. 741; Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 15 Sup. Ct. 673, 39 L. Ed. 759; Pittsburgh Ry. v. Pittsburgh, 211 Pa. 479, 60 Atl. 1077; Fatjo v. Pfister, 117 Cal. 83, 48 Pac. 1012; State v. Bengsch, 170 Mo. 81, 70 S. W. 710.

A discriminatory excise tax is offensive both to the state and federal Constitutions. Ala. Consolidated Co. v. Herzberg, 177 Ala. 248, 59 South. 305; Judson on Taxation (1st Ed.) pp. 258–264; Birmingham-Tuscaloosa Ry. v. Carpenter, 194 Ala. 141, 69 South. 626; Board of Commissioners of Mobile v. Orr, 181 Ala. 308, 61 South. 920, 45 L. R. A. (N. S.) 575.

In levying the tax on those who mine coal and load it into railroad cars, and not on those who mine coal and load it into wagons, schedule 66 is arbitrary and void. Harding v. People, 160 Ill. 459, 43 N. E. 624, 32 L. R. A. 445, 52 Am. St. Rep. 344; Cotting v. Godard, 183 U. S. 79, 102–108, 22 Sup. Ct. 30, 46 L. Ed. 92; Adams v. Miss. Lumber Co., 84 Miss. 23, 36 South. 68; In re Yot Sang (D. C.) 75 Fed. 983; Birmingham-Tuscaloosa Ry. v. Carpenter, 194 Ala. 141, 69 South. 626; Commonwealth of Pennsylvania v. Alden Coal Co., 251 Pa. 134, 96 Atl. 246, L. R. A. 1916F, 154, and note; City Council of Montgomery v. Kelly, 142 Ala. 552, 38 South. 67, 70 L. R. A. 209, 110 Am. St. Rep. 43; Ala. Consolidated Co. v. Herzberg, 177 Ala. 248, 59 South. 305; Minn. v. Wagener, 69 Minn. 206, 72 N. W. 67, 38 L. R. A. 677, 65 Am. St. Rep. 565; Commonwealth v. Clark, 195 Pa. 634, 46 Atl. 286, 57 L. R. A. 348, 86 Am. St. Rep. 694.

The right to own and enjoy property is not a privilege conferred by or derived from Constitutions or the statutes, but is a fundamental right, existing at common law as a part of our free institutions. Jones v. N., C. & St. L. R. R., 141 Ala. 393, 394, 37 South. 677; Cooley, Const. Lim. (6th Ed.) p. 49; 6 R. C. L. top page 18; Thompson v. Kreutzer, 112 Miss. 165, 72 South. 891; City of Lexington v. Thompson, 113 Ky. 540, 68 S. W. 477, 57 L. R. A. 775, 776, 101 Am. St. Rep. 361; State v. Denny, 118 Ind. 449, 21 N. E. 274, 4 L. R. A. 65, 77.

The applicable provisions of the Alabama Constitution are sections 35, 211, 214, and 217.

(a) A tax on property, or on taxable property, is a tax assessable and payable solely on account of the ownership, use, or disposition of property (the essential attributes of the right of property), which leaves no opportunity or election on the part of the owner or possessor of the property to avoid the tax, except upon the abandonment of the property as such, and which is not levied in the exercise of the police power.

"The stamp duty is contingent on the happening of the event of sale, and the element of absolute and unavoidable demand is lacking." Thomas v. United States, 192 U. S. 363, 24 Sup. Ct. 305, 48 L. Ed. 481.

(b) Section 211 of the Constitution permits no tax on property of any kind with reference to its yield, or by any standard or measure, except its value. Board for Assessment v. Ala. Central R. R., 59 Ala. 551; Western Union Tel. Co. v. State Board of Assessment, 80 Ala. 273, 60 Am. Rep. 99; Sims v. Parish of Jackson, 22 La. Ann. 440; 27 Amer. and Eng. Ency. of Law, 605; 37 Cyc. 760.

The exemption of wagon mines destroys the tax under schedule 66. Vines v. State, 67 Ala. 73.

The statute is highly penal, and as such

will be strictly construed. See sections 417 to 421 of the Revenue Act.

In addition, as a tax measure it will be construed against the state. State v. Roden Coal Co., 197 Ala. 417, 73 South. 5; Ex parte Birmingham, 201 Ala. 641, 79 South. 113; Crocker v. Malley, 249 U. S. 223, 39 Sup. Ct. 270, 63 L. Ed. 573, 2 A. L. R. 1601; Gould v. Gould, 245 U. S. 151, 38 Sup. Ct. 53, 62 L. Ed. 211.

Mining coal or ore is an incident to the business of mining and disposing of coal and ore, and patently mining coal and ore is merely one feature of defendant's principal business of making pig iron. Defendant is taxed, without reference to its property taxes, on its franchises and by other excise taxes. Occupation taxes cannot be levied on a business as a whole and then on its incidents. Gambill v. Endrich, 143 Ala. 509, 510, 39 South. 297; Tuscaloosa v. Holczstein, 134 Ala. 636, 32 South. 1007; Mefford v. Sheffield, 148 Ala. 539, 41 South. 970; Southern Express Co. v. Rose, 124 Ga. 581, 53 S. E. 185, 5 L. R. A. (N. S.) 625. See note on page 619.

The mining of its own coal and ore by defendant, for use in its business of making and selling pig iron, is not an occupation or business; not more so than is defendant's transportation of these raw materials to the furnace, nor more so than any of its furnace operations. An occupation, within the meaning of statutes levying occupation taxes, involves the element of receipt of money as the result of which the activity is taxed. It must be levied on that which is in fact one's occupation. Texas Co. v. Amos (Fla.) 81 South. 471; Watts v. Com., 106 Va. 851, 56 S. E. 223, Ann. Cas. 1914B, 738; Lane v. Rowan County, 139 N. C. 443, 52 S. E. 140; State v. Anniston Rolling Mill, 125 Ala. 121, 27 South. 921; Love v. State, 31 Tex. Cr. R. 469, 20 S. W. 978; Carter v. State, 44 Ala. 29; Perkins v. State, 50 Ala. 157.

J. Q. Smith, Atty. Gen., and Henry P. White and Lawrence E. Brown, Asst. Attys. Gen., for the State.

The state takes the position that the taxes in question are not property taxes, but special taxes, and concedes their unconstitutionality if they are property taxes. That they are not property taxes they cite 183 Ky. 84, 209 S. W. 19; 125 Ky. 402, 101 S. W. 321; 217 U. S. 563, 30 Sup. Ct. 578, 54 L. Ed. 883; 40 S. C. 221, 18 S. E. 853; (D. C.) 249 Fed. 172.

The tax is not discriminatory. 251 Pa. 134, 96 Atl. 246, L. R. A. 1916F, 154; 183 Ky. 84, 209 S. W. 19; 240 U. S. 369, 36 Sup. Ct. 379, 60 L. Ed. 691; 247 U. S. 132, 38 Sup. Ct. 444, 62 L. Ed. 1025; 185 U. S. 364, 22 Sup. Ct. 673, 46 L. Ed. 949; 96 U. S. 97, 24 L. Ed. 616; 220 U. S. 61, 31 Sup. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160; 229 U. S. 322, 33 Sup. Ct. 833, 57 L. Ed. 1206; 50

W. Va. 533, 40 S. E. 514; 64 Neb. 342, 89 N. W. 1053, 57 L. R. A. 922; 80 Ala. 273; 188 Ala. 487, 66 South. 169, L. R. A. 1915A, 185, Ann. Cas. 1916E, 752.

The exemption of wagon mines has not the effect to render the act void.

185 U. S. 203, 22 Sup. Ct. 616, 46 L. Ed. 872; 186 Ill. 134, 57 N. E. 880, 56 L. R. A. 266. See, also, 121 Ala. 28, 25 South. 622; 155 Ala. 149, 46 South. 237; 147 Ala. 682, 39 South. 353; 148 Ala. 539, 41 South. 970; 94 Ala. 156, 10 South. 534; 5 Ala. App. 231, 59 South. 741; 53 Ala. 510; 146 Ala. 177, 41 South. 465; 120 Ala. 623, 24 South. 952; 151 Ala. 473, 44 South. 113, 12 L. R. A. (N. S.) 568, 125 Am. St. Rep. 33; 79 Ala. 1; 118 Ala. 143, 22 South. 627, 72 Am. St. Rep. 143; 151 Ala. 469, 44 South. 388, 125 Am. St. Rep. 31.

ANDERSON, C. J. [1] The constitutionality of the provisions in question is attacked from different angles and upon various grounds, and the question of prime importance is the determination of whether or not the levy is a property tax or a tax upon a privilege or occupation. The Legislature in plain and unambiguous terms designates it as a license or privilege tax, and levies it upon the business or occupation of operating mines. The tax is not levied upon the coal or iron ore, or upon the land from which it may be extracted. It is upon the business, and the charge is simply based upon the tonnage as a means of ascertaining the amount of said tax. It, being upon the business of mining coal and iron ore, would apply to any firm, individual, or corporation engaged in such business, whether owning the fee in the land or not. Eliasberg v. Grimes, 86 South. 56;[1] Phœnix Co. v. State, 118 Ala. 143, 22 South. 627, 72 Am. St. Rep. 143; Goldsmith v. Huntsville, 120 Ala. 182, 24 South. 509; Capital City Water Works v. Board of Revenue, 117 Ala. 303, 23 South. 970; W. U. T. Co. v. State Board of Assessments, 80 Ala. 273, 60 Am. Rep. 99.

[2] The fact that the tax is fixed at 2 cents per ton on the coal and 3 cents per ton on the iron ore does not render it a direct tax on the coal and ore, or prevent its being a privilege or license tax upon the occupation or business of mining. Birmingham v. Goldstein, 151 Ala. 473, 44 South. 113, 125 L. R. A. (N. S.) 568, 125 Am. St. Rep. 33; Producers' Oil Co. v. Stephens, 44 Tex. Civ. App. 327, 99 S. W. 157; Stephens v. Mining Star Oil Co. (Tex. Civ. App.) 99 S. W. 159; Oil Co. v. State (Tex. Civ. App.) 99 S. W. 159. We are cited to the case of Thompson v. McLeod, 112 Miss. 383, 73 South. 193, Ann. Cas. 1918A, 674. We are not convinced of the soundness of the conclusion of the majority in said case, or impressed with the

[1] Post, p. 492.

reasoning of the writer of the opinion. We think the pointed dissent of Justices Potter and Cook is sound, and conforms to the rule heretofore enunciated by our own court and in the well-considered Texas cases, supra.

[3] In the levy of a privilege or license tax the Legislature is not restricted as to the trades, businesses or occupations which it may select, or the amount levied; so long as it does not discriminate between members of the same class, that is, those similarly situated, and the tax must not be so exorbitant as to prohibit or oppress or restrain a legitimate and useful trade, business, or occupation, as distinguished from a certain class which, while tolerated is recognized as being hurtful to public morals, productive of disorder, or injurious to the public. City of Montgomery v. Kelly, 142 Ala. 552, 38 South. 67, 70 L. R. A. 209, 110 Am. St. Rep. 43; Standard Chemical Oil Co. v. City of Troy, 201 Ala. 89, 77 South. 383, 387, L. R. A. 1918C, 522; Gamble v. City of Montgomery, 147 Ala. 682, 39 South. 353. So long as a privilege or license tax upon the legitimate line of trade, occupation, and business does not violate either of the foregoing requirements, it is in no sense governed, controlled, or restrained, by our constitutional provisions which relate to a direct property tax, as distinguished from a license, privilege, or occupation tax. Authorities, supra.

[4-6] We are unable to understand how this tax violates the Bill of Rights, as depriving one engaged in the mining business of his inalienable rights, etc. The fact that one who pays the privilege tax may also own the land from which the coal is taken, and also pay an ad valorem tax on the land, does not render the former an unwarranted charge upon him for the use of his property. The fact that property once taxed may be used in connection with a distinct business or occupation, directly or indirectly, does not prevent a privilege tax upon the business or occupation; and it matters not whether the miner owns the land from which the coal is mined, as he can be as much engaged in the business of mining coal from his own land as if doing so upon a rental, royalty, or other contract basis. It could as reasonably be contended that one who keeps a livery stable could not be subject to an occupation tax, because he owned and paid taxes upon the horses and vehicles in his stable, or that the tax held to be a privilege one in the Goldstein Case, supra, could not have been sustained, because the cows from which the owner got milk and used in conducting his dairy business were taxed. Nor do we understand that this license tax deprives the owner of the only use of the property for which he was previously taxed. There is nothing to indicate that he is paying a tax on the coal, but only upon the land from which it is mined, and he can certainly put the land to other uses. This, however, is only arguendo, and in response to some of appellant's contentions, as we do not mean to hold that the privilege tax would be invalid, even if the direct tax had been paid on the coal as a distinct and separate entity from the land.

[7] It is also urged, that, if the court should hold the tax in question to be upon a privilege or occupation, and not controlled by the state Constitution as to rate and uniformity, schedule 66 violates our organic law, federal and state, because it arbitrarily discriminates between those operating wagon mines and those who do not. The act does not apply to "wagon mines which do not load said coal in or on railroad cars, boats or barges," and therefore discloses a discrimination or classification; but this court must presume that it is reasonable, and not arbitrary, unless the contrary appears, which is not the case. Of course, there can be no discrimination between members of the same class—that is, those similarly situated—and the Legislature cannot make a fanciful or capricious classification; but it can reclassify members of a general class, so long as there may be a substantial, as distinguished from a fictitious, basis for doing so. The act in question excepts only what is termed wagon mines; that is, mines which transfer or remove their coal in wagons, and not by cars, boats, or barges. In other words, it excepts only that class of mines which may handle or market their product with wagons, and which are doubtless remotely situated from rail or water transportation; and it is evident that the Legislature did not regard wagon mines, the output of which is small, and which are no doubt in the experimental stage, as competitors with those so large and fortunately situated as to employ and enjoy a larger, and perhaps less expensive, method of handling the coal, or that the state would find it expedient or profitable to exact and collect a privilege tax from those engaged in operating wagon mines. The agreed statement of facts corroborates, rather than rebuts, this presumption in favor of the reasonableness of the legislative classification, if we are permitted to look to same. St. Louis Co. v. Ill., 185 U. S. 203, 22 Sup. Ct. 616, 46 L. Ed. 872.

Counsel for appellant cite the case of Harding v. People, 160 Ill. 459, 43 N. E. 624, 32 L. R. A. 445, 52 Am. St. Rep. 334. We are not, of course bound by this case, and, whether sound or not, we do not think the act there considered the same as the one under consideration. The classification there did not obviate an unreasonable discrimination, as it was a weighing tax upon those who mined and shipped coal, and the court stressed the point that the output of a mine might be sold to a third party, who could ship the

coal and avoid the tax, while, if the miner shipped the coal himself he would have to pay the tax.

[8, 9] This appellant also questions the applicability of the act as to its business, in that it only markets or sells a small portion of the coal it mines, and that the operation of its mines, coal and iron ore, is but an adjunct or component part of its general business of operating its furnaces for the manufacture of iron. This may be true, and mining be a subsidiary of its general business; but the act is not limited to those who mine coal and iron ore only for sale upon the market, but applies to those engaged in the business of mining for profit, as distinguished from a personal or domestic use. Words and Phrases, Second Series, vol. 1, p. 531. Nor are we of the opinion that appellant's business of mining is such an inseparable and integral part of the general business of manufacturing iron as to exclude it as a coal or iron ore operator by virtue of a license as a manufacturer of iron. The business of manufacturing iron and operating furnaces does not necessarily include the business of operating coal and iron ore mines; the product is, of course, so used, but the manufacturer of iron can purchase coal and iron ore, and is not compelled to operate mines in order to manufacture iron, and if he prefers to mine it he thereby becomes a miner, and engaged in the separate and distinct business of mining, notwithstanding his chief object in doing so may be to supply material to be used in the business of manufacturing iron. It could as well be contended that a shoe manufacturer would not have to pay license on operating a tannery, if the leather was principally or entirely used in the shoe factory. Mobile v. Craft, 94 Ala. 156, 10 South. 534; Mobile v. Richards, 98 Ala. 594, 12 South. 793, explained and reaffirmed in the case of Tuscaloosa v. Holczstein, 134 Ala. 636, 32 South. 1007.

The judgment of the circuit court is affirmed.

Affirmed.

All the Justices concur.

---

⬤⟾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes