170 So. 64

## CITY OF BIRMINGHAM v. STATE ex rel. CARMICHAEL, Atty. Gen.

### 6 Div. 968.

Supreme Court of Alabama.

June 30, 1936.

Rehearing Denied Oct. 29, 1936.

W. J. Wynn, J. H. Willis, and Clarence Mullins, all of Birmingham, for appellant.

140

A. A. Carmichael, Atty. Gen., Matt H. Murphy, Sp. Asst. Atty. Gen., and Thos. J. Judge, of Birmingham, for the State.

FOSTER, Justice.

This is an action by the state against the city of Birmingham for the collection of the gasoline tax. provided for by the Act of July 10, 1935 (Gen.Acts 1935, pp. 441, 508, § 348, Schedule 156 et seq.), alleging that defendant purchased the gasoline without the state and shipped it into the state in tank cars and was received by defendant in Jefferson county, Ala., and there transferred to storage tanks of defendant, and was owned and stored by defendant for consumption in this state, and was from time to time withdrawn by defendant for municipal and governmental uses in various quantities.

Demurrers to the complaint were overruled, and defendant declined to plead further, whereupon judgment was rendered for plaintiff. Defendant appeals and assigns as error the judgment overruling the demurrer.

The chief argument is that the act in question is in violation of section 91, Constitution. It imposes the tax on the persons named and expressly defines persons as including municipal corporations.

We had occasion previously to consider the question of whether they were intended to be included in previous acts in which they were not named, and applied the general rule that a tax levy in general terms and without clearly indicating that municipal corporations were intended to be included did not include them. State v. City of Montgomery, 228 Ala. 93, 151 So. 856.

The act of 1935, supra (Gen.Acts 1935, p. 256), was evidently intended to make it clear that they were included. There is now no such question as then existed, but it is contended that the act as amended imposes a tax on the property of municipal corporations in violation of section 91, Constitution. It provides that "the legislature shall not tax the property, real or personal, of the state, counties, or other municipal corporations." It is not levied in proportion to the value of the gasoline, and if it is a property tax it also violates section 211, and perhaps other provisions of the Constitution. But section 211, Constitution, has been held to relate only to direct taxes on property and not to privileges or excises. Phœnix Carpet Co. v. State, 118 Ala. 143, 22 So. 627, 72 Am.St. Rep. 143.

■ Undoubtedly section 91, Constitution, prohibits a direct tax on the property of cities. It is argued first that the gasoline tax is such a direct property tax, and, second, that section 91, Constitution, should be interpreted to prohibit any other sort of tax, since to tax is to impose a personal liability upon the city, and thereby to take its property, to wit, money, and that it is not important whether its extent is measured by the value of some of its property or the amount of it and the manner in which it is handled, though in one instance it is set up as a direct tax and in the other as an excise.

■ That the tax is an excise was affirmed in the case of State v. City of Montgomery, supra. But it is urged that the discussion in that case was not necessary to its decision, was dictum, and erroneous, and should be disregarded here where it is directly involved. True, it was there only incidental to the point on which that case turned. But we think it was there correctly held that a "storer" of gasoline within the terms of the act is taxable for that privilege. It has been uniformly held that such a tax is not a direct property tax. Graves, Governor, v. Texas Co., 298 U.S. 393, 56 S.Ct. 818, 80 L. Ed. 1236; Ervin v. Alabama (C.C.A. 5th) 80 F.(2d) 432; Pan American Petroleum Corporation v. Alabama (C.C.A. 5th) 67 F.(2d) 590; Edelman v. Boeing Air Transport, 289 U.S. 249, 53 S.Ct. 591, 77 L.Ed. 1155; Nashville, C. & St. L. Ry. Co. v. Wallace, 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730, 87 A.L.R. 1191; Sheip & Co. v. Amos, 100 Fla. 863, 130 So. 699; Foster & Creighton Co. v. Graham, 154 Tenn. 412,

285 S.W. 570, 47 A.L.R. 971; 84 A.L.R. 866; People v. City and County of Denver, 84 Colo. 576, 272 P. 629; Standard Oil Co. v. State, 218 Ala. 243, 118 So. 281.

■ A property tax is laid upon the property, although its owner is due to pay it. The state gasoline tax in question is not laid on the property, but on the privilege of its storage, and that regardless of ownership, and the amount is measured by the gallons withdrawn from storage. The amount of the tax does not fluctuate as the price of gasoline changes.

It is an imposition upon the privilege of storing in the state a dangerous commodity not laid on the property, but on the privilege. The distinction has been too long sustained to be led off by the specious argument that they are both essentially laid on the person, but measured by different formulas. An illustration is where a tax is imposed on a corporation graduated by the amount of paid-up capital stock, without regard to its value. It is an excise tax. Phœnix Carpet Co. v. State, supra, 118 Ala. 143, at page 151, 22 So. 627, 72 Am.St.Rep. 143; Southern Car & Foundry Co. v. State, 133 Ala. 624, 32 So. 235. And when measured by the number of cows in a dairy (Mayor and Aldermen of Birmingham v. Goldstein, 151 Ala. 473, 478, 44 So. 113, 12 L.R.A.(N.S.) 568, 125 Am.St.Rep. 33), and by the gross amount of sales by a merchant (Goldsmith v. Mayor, etc., of Huntsville, 120 Ala. 182, 24 So. 509; Standard Oil Co. v. State, 218 Ala. 243, 118 So. 281), and the tobacco tax (Exchange Drug Co. v. State Tax Commission, 218 Ala. 115, 117 So. 673), and the severance tax (Republic Iron & Steel Co. v. State, 204 Ala. 469, 86 So. 65).

■ It is our judgment that section 91, Constitution, was only intended to prohibit a direct tax on property, which is an ad valorem tax. We do not think a fine spun technical construction should be so applied as to exclude all forms of taxation against cities and counties.

■ We pointed out in State v. City of Montgomery, supra, that, except as restrained by the Constitution, the State Legislature may tax cities as other persons. There are only two factors necessary to include them—that it has been done by clear intention, and that it is not restricted by the Constitution in respect to the imposition of the tax as laid by the Legislature. Many cases are cited

in 61 Corpus Juris, 368 et seq., and 419 et seq. We also in that opinion cited many cases showing that it is generally held that the state may impose on cities such a tax as that how under consideration.

■ It is not a burden upon interstate commerce under the facts recited in the complaint in this case. Ervin v. Alabama, supra; Pan American Petroleum Corporation v. Alabama, supra; Gregg Dyeing Co. v. Query, 286 U.S. 472, 52 S.Ct. 631, 76 L.Ed. 1232, 84 A.L.R. 831; Nashville, C. & St. L. Ry. Co. v. Wallace, supra.

It is our opinion that the tax does not violate section 91, Constitution, nor burden interstate commerce, and is within the power of the Legislature in so far as any question is here raised and argued.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

On Rehearing.

PER CURIAM.

Application for rehearing overruled.

ANDERSON, C. J., and BOULDIN, BROWN, FOSTER, and KNIGHT, JJ., concur.

GARDNER and THOMAS, JJ., dissent.

GARDNER, Justice (dissenting).

That the gasoline, the withdrawal of which from storage is here made the subject of taxation, is the property of the city, and necessary for use in the exercise of its governmental functions, appears as an uncontroverted fact. I agree that the tax here involved is an excise, as distinguished from an ad valorem tax. State v. City of Montgomery, 228 Ala. 93, 151 So. 856; Graves v. Texas Co., 298 U.S. 393, 56 S.Ct. 818, 80 L.Ed. 1236.

And, as stated in the opinion by Mr. Justice FOSTER, the statute now before us is sufficiently definite as to embrace municipalities within its influence and subject to the tax. State v. City of Montgomery, supra; 60 A.L.R. 878.

The important question, therefore, relates to the proper construction of section 91 of our State Constitution, which, in so far as here pertinent, reads: "The legislature shall not tax the property, real or personal, of * * * municipal corporations." The opinion rendered interprets this language as prohibiting an ad valorem tax on real and personal property of the city, and nothing more.

I am persuaded this interpretation is too restrictive, and that it should be given broader effect in harmony with the evident intent of the makers of our Constitution. And in this connection it is well to bear in mind the rule here well established that "Constitutions usually deal with larger topics and are couched in broader phrase than legislative acts; hence their just interpretation is not always reached by the application of similar methods. * * * 'A Constitution is not to receive a technical construction, like a common-law instrument, or statute.'" Realty Investment Co. v. City of Mobile, 181 Ala. 184, 61 So. 248, 249, "Narrow or literal constructions are not indulged except in favor of elemental rights or settled principles of republican government." Bouchelle v. State Highway Commission, 211 Ala. 474, 100 So. 884. The purpose of the Constitution should be kept in mind (Tommie v. City of Gadsden, 229 Ala. 521, 158 So. 763), and "a constitutional prohibition may be expressed, or it may result from necessary implication." State Docks Commission v. State, 227 Ala. 414, 150 So. 345, 346.

Illustrative of this latter class, that is, prohibition by implication, is the decision of Evans v. Gore, 253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887, 11 A.L.R. 519, to the effect that the salary of a federal judge was not subject to an income tax, though there was no express prohibition against such a tax, but by implication it was prohibited by virtue of the constitutional provision against a diminution of his salary during continuance in office. And, upon like reasoning, the members of this court condemned an occupational tax against officials protected by the Constitution from diminution of their salaries during their terms of office, with the concluding sentence: "That which is forbidden directly cannot be done indirectly, and the law abhors evasions and subterfuges." In re Opinion of the Justices No. 20, 225 Ala. 502, 144 So. 111, 112.

But still another principle calls for a liberal construction of this particular provision of the Constitution. We have previously observed, and gave direct application to the generally accepted rule, even as to an occupational tax, that when "a tax levy is laid in general terms with nothing to indicate that it was intended to apply to a city or county, it will be held not

so to apply." State v. City of Montgomery, 228 Ala. 93, 151 So. 856, 858.

There is an implied exemption in such cases, created by the courts, based upon the theory that the city must levy a tax to pay the tax, which will not be presumed was the legislative intent. State v. City of Montgomery, supra; 60 A.L.R. 878; 2 Cooley on Taxation (4th Ed.) p. 1312. The provisions of section 91 of our Constitution give force and effect to this policy of exemption, and it is well recognized by the authorities that constitutional and statutory provisions exempting property which it has always been the policy of the state to exempt, shall be liberally construed. 61 Corpus Juris, 421; 61 Corpus Juris, 395.

It is clear, therefore, that section 91, Constitution, is to be given a liberal construction. The framers of the Constitution not only had in mind that to satisfy a tax exacted by the state, the city must levy a tax to pay the tax (the foundation of the court-made exemption), but they evidently also considered the matter of local self-government, that the funds of a city are derived from property and excise taxes of the inhabitants of that particular locality, and intended for local use. Such was the primary cause of their creation.

Our Constitution-makers evidently were impressed with the sound reasoning which gave exemption to these local governments from mere general legislative enactments. Knowing that the revenues were derived from local taxation, and were intended for local use, they were impressed that to divert such revenues to a foreign purpose would be wholly unjustifiable. And to give effect to this intention, section 91 of our Constitution was adopted, which prohibits the Legislature from taxing the property, real or personal, of such localities. Such language differs from that found in section 211 of the Constitution, wherein it is provided that all taxes levied "on" property shall be assessed in exact proportion of value, and which has been, held to relate only to direct taxes on property, and not to privilege or excise taxes. Phœnix Carpet Co. v. State, 118 Ala. 143, 22 So. 627, 72 Am.St.Rep. 143. A tax "on property" implied a direct tax on the commodity, and, therefore, a property tax. Such was the holding of the Florida Supreme Court in Jerome H. Sheip & Co. v. Amos, 100 Fla. 863, 130 So. 699, 704, wherein the court said: "To a technician seeking only the legal aspect of the tax for purposes of analysis and classification, the language of the title, 'a tax "on" petroleum products,' taken literally and alone, perhaps might imply a direct tax 'on' the commodity, and hence a property tax."

But section 91, Constitution, has no such significant language, only a single prohibition against taxing property of the municipalities real or personal, or to use the words of the Constitution: "The legislature shall not tax the property, real or personal." There is nothing said about a tax on property, and no reference whatever to the character or kind of tax intended to be prohibited. To hold the meaning to an ad valorem tax is to add a restriction not therein expressed and is to give the Constitution a narrow, rather than a liberal interpretation. There are many kinds of taxes, direct or indirect, specific, ad valorem or property taxes, and excise taxes, and other minor classifications unnecessary to note. 61 Corpus Juris, 73. And in Foster & Creighton Co. v. Graham, 154 Tenn. 412, 285 S.W. 570, 47 A.L.R. 971, it was said that a direct tax is one imposed on property according to its value, generally spoken of as a property or ad valorem tax, but that a privilege or excise tax is an indirect tax.

The tax here in question is both for regulation and revenue, of a kindred character to that considered in Gundling v. Chicago, 177 U.S. 183, 20 S.Ct. 633, 44 L.Ed. 725, where the holding was that the taxing power may be exerted for either regulation or revenue, or for both purposes. Such was also the ruling of the Florida court in Jerome H. Sheip & Co. v. Amos, supra, concerning this very character of tax on gasoline.

The verb "tax" means "take for governmental expenses, or exact tribute or contribution from for government expense." 4 Words and Phrases, Second Series, p. 846; 3 Words and Phrases, Fourth Series, p. 622; 8 Words and Phrases, First Series, p. 6883; 7 Words and Phrases, Third Series, p. 384. "The right to tax is the right to take private property for the State." Wall-Hay-Wall Lumber Co. v. Mathews, 211 Ala. 426, 100 So. 824, 826. "A tax is an authoritative exaction for the support of the government." Montgomery County v. City of Montgomery, 190 Ala. 366, 67 So. 311, 313. To "tax" also means "to lay a burden upon." Webster's International Dictionary.

Taxes are payable out of the general assets of the taxpayer and any lien acquired is but for the better protection and collection of the tax. The particular gasoline tax here in question is collected, when delinquent, by execution issued by the State Tax Commission, and the tax is a lien against all the property in this state of the persons charged therewith. Therefore for this delinquent tax a lien is fixed upon all the property of the municipality and execution ordered issued. It is thus seen that the whole of the property of the municipality is burdened with the payment of this tax, and any part of its property subject to be taken from it for its satisfaction. And in addition injunctive relief may be obtained against the withdrawal or use of the gasoline until the tax is paid. Gen.Acts 1935, p. 515.

In these modern days gasoline is an essential commodity in the proper functioning of government, so recognized in the recent case of Graves v. Texas Company, 298 U.S. 393, 56 S.Ct. 818, 822, 80 L.Ed. 1236. It is only valuable to the city for its use, and to be used it must first be stored and withdrawn. It has been referred to by some writers as "a fugitive mineral," and from a practical standpoint its storage is essential for its subsequent use. Confessedly, section 91 of the Constitution prohibits a tax on the gasoline as a commodity, as property tax, but the insistence is that the tax may nevertheless be exacted for its use. But this is to do indirectly what is expressly prohibited to be done directly, for in the hands of the city the use of the gasoline is its sole property value. As said in 50 Corpus Juris, 732: "The right of user is an essential quality or attribute of absolute property, without which absolute property can have no legal existence. There can be no conception of property aside from its control or use, and upon its use depends its value."

The Supreme Court of North Carolina in O'Berry v. Mecklenburg County, 198 N.C. 357, 151 S.E. 880, 883, 67 A.L.R. 1304, discusses this very question in the following language:

"An excise tax is therefore a charge imposed by law, and, in the case at bar, it is a charge upon the use of property devoted wholly to the discharge of governmental functions. Gasoline is essential to the governmental function of road building. Therefore, to levy a tax upon the use of one of the means by which governmental function is discharged is to lay a burden upon governmental function itself. This idea was expressed by the Supreme Court of the United States in Helson v. Kentucky, decided April 8, 1929, and reported in 279 U.S. 245, 49 S.Ct. 279, 281, 73 L.Ed. 683.

"In that case the state of Kentucky levied a tax upon the use of gasoline which was essential to the operation of a ferry boat engaged in interstate commerce. The court said: 'A tax which falls directly upon the use of one of the means by which commerce is carried on directly burdens that commerce.' Panhandle Oil Co. v. Mississippi, 277 U.S. 218, 48 S.Ct. 451, 72 L.Ed. 857, 56 A.L.R. 585. The defendant county cannot dispose of gasoline except to use it for governmental purposes. Hence in the hands of the county the use of gasoline constitutes its sole property value.

"Morever, is it to be presumed, in the absence of express statutory declaration to that effect, that the General Assembly intended to levy a charge or excise tax upon the performance of governmental function? The state capitol in Raleigh is owned by the state. The physical property is therefore exempt from taxation by virtue of the constitutional exemption. Could the Legislature levy a privilege tax or excise tax of $10,000, or other sum, a year upon the use of the capitol by the Legislature and the Governor and other state officers in discharging their constitutional and governmental duties? As to whether the Legislature has such power we do not decide, but certainly such power would not be presumed, or such a result anticipated, in the absence of express statutory declaration."

These observations are merely to illustrate the proper interpretation of this constitutional provision. And we might follow the illustration to the municipality here involved. The automobiles, the patrol wagons, and the like of the city are exempt from ad valorem taxation. But was it contemplated that the state might nevertheless impose a tax on their use, and thus lay a burden upon the property of the city? Or was it contemplated that the state might tax the city for the use of its auditorium, though the auditorium itself is exempt? Or, still more pertinent, was it intended that municipally owned and operated waterworks and electric light plants would be exempt from an ad valor-

em tax, yet the municipalities be taxed for their operation? And as to counties, also within this statute and equally protected by section 91 of the Constitution, was it contemplated that all the road machinery of the county should be exempt from taxation, and yet the state left to tax the use of the machinery on the roads of the county? Or is it more reasonable to assume that the Constitution-framers intended that the property of the city and county, real or personal, used in the exercise of their governmental functions, should not be burdened with any character of taxation, regardless of whatever method was pursued, or whether it be a direct or an indirect tax?

The purpose was to shield the local governments from diminution of their revenue locally acquired for local purposes, from legislative diversion to some foreign use. Any tax levied on the city is to come in the main from revenues thus derived by their local taxation. To tax the property of the city is to take it for governmental purposes, and section 91 of the Constitution was intended to prohibit such result whatever be the means employed.

To say that the Constitution has application only to ad valorem taxation is merely to say that the Legislature is prohibited from only one means of acquiring the property of the city, but is left free to pursue other and equally as effective methods. The language of the Supreme Court of the United States in Graves v. Texas Company, supra, is here much in point: "The validity of the tax is to be determined by the practical effect of enforcement. To apply any other test of constitutionality would be to treat 'a prohibition, which is general, as if it were confined to a particular mode of doing the forbidden thing.'"

So in the instant case, the practical effect of permitting a tax on the city for the use of one of its essential commodities is as effective as permitting a tax on the commodity itself, as well illustrated by the quotation from the North Carolina court, supra.

It is unreasonable to suppose that the framers of the Constitution intended to exempt the physical property of cities from taxation, but at the same time had in contemplation that the Legislature would have the power to tax the cities for the use of the very property so exempted.

As we have previously observed, this particular constitutional provision (here for the first time for interpretation) is to be given a liberal construction, and so construed, the prohibition extends not only to an ad valorem tax on property of the city, but to any tax involving its use, such as the excise tax here involved. Such a prohibition is clearly, and we think necessarily, implied, if the manifest intention of the Constitution-makers is to be given effect.

In State v. City of Montgomery, supra, the decision rested upon the construction of the general statute, and the constitutional question here considered was therefore not there involved. Any expression therefore upon that question is properly to be treated as dictum, and without binding effect.

There may be some authorities in other jurisdictions tending to a contrary view. Illustrative is People v. City of Denver, 84 Colo. 576, 272 P. 629, though the constitutional provision there differs somewhat from our own. But if it be held substantially the same, nevertheless a reading of the opinion leads to the conclusion that the court overlooked the fundamental principle underlying such constitutional exemption, as it finds no discussion therein.

In construing our own Constitution, the aim should be to carry out the intention of its framers from the language used and the purpose to be subserved, and authorities from other jurisdictions are not of controlling influence.

Upon reconsideration, therefore, I am persuaded section 91 is properly to be construed as prohibiting the state from placing any taxation burdens upon any of the property of our municipalities used in the exercise of their governmental functions, whether it is done directly as in an ad valorem tax, or indirectly as in an excise tax, and that the method of taxation is wholly immaterial. I am therefore convinced that the present tax, as applicable to the city, violates section 91 of our Constitution, and that the judgment should accordingly be reversed.

I therefore respectfully dissent.

Justice THOMAS concurs in the foregoing views.