27 So.2d 249

### BROOKS et al. v. CITY OF BIRMINGHAM.

#### 6 Div. 403.

Supreme Court of Alabama.

Aug. 2, 1946.

---

[1] 247 Ala. 588.

Theodore J. Lamar, of Bessemer, for appellants.

Geo. P. Bondurant, of Birmingham, for appellee.

LAWSON, Justice.

The bill in this case was filed by appellants, Dovie Smith Brooks et al., as trustees of Greenwood Cemetery Company, a corporation, against the City of Birmingham.

The purpose of the bill was to have the court declare that a municipal improvement assessment made by the City of Birmingham against certain property of the Cemetery Company was void and that the deed wherein the City became the purchaser at a sale to satisfy the said assessment was likewise void.

Demurrer was sustained to the original bill. Respondent answered the bill as amended. The appeal is from a decree denying relief and dismissing the bill.

The facts as stipulated between the parties are in substance as follows: Greenwood Cemetery Company was incorporated in June, 1925, for the following purposes, as expressed in its certificate of incorporation: (1) To purchase or otherwise acquire and own real estate; (2) to construct, lay out, and maintain one or more cemeteries in Jefferson County, Alabama, and to use or permit the same to be used for the burial therein of human remains; (3) to buy, sell, rent, lease and sub-lease real estate; (4) to borrow money and execute notes and mortgages to secure said notes whether for money borrowed or other indebtedness; (5) to sell lots and graves in such cemetery, and to do any and all other things necessary or customary in the operation of a cemetery. The amount of the total authorized capital stock was $3,000, all of which was paid in.

In June, 1925, the Greenwood Cemetery Company received a deed to approximately sixteen acres of land, which land was described by metes and bounds, and was conveyed as one tract. The property described in said deed also included a strip of land approximately thirty feet wide, used as a dirt road continuously since a date prior to December 31, 1910. Complainants insist that the Greenwood Cemetery Company has continuously owned as one parcel all the land embraced in the deed, including the road, which they contend is a private road. The said dirt road goes through the cemetery. At one end it intersects Woodlawn Road and at the other end it intersects University Avenue. Woodlawn Road and University Avenue are both public thoroughfares of the City of Birmingham. The respondent claims that said dirt road is a public road by prescription. It appears that since 1910 the City of Birmingham at intervals has worked and maintained the said dirt road and it has been used since that time by the public without any interruption, hindrance or protest on the part of any person or corporation holding title to the abutting lands. There is no evidence to the contrary.

There is no survey of record which makes a division of the entire tract of land which was conveyed to the Greenwood Cemetery Company in 1925 but, for the purpose of clarifying the issues in this case, a map was introduced in evidence, which was prepared by agreement of the parties under the supervision of the City Engineer. This map shows the land purchased in 1925 by the Greenwood Cemetery Company to be divided into three tracts. The map shows that one tract is bounded by lines apparently drawn with a red pencil and is referred to in the testimony as the red tract; another tract is bounded by lines drawn with a blue pencil and is referred to in the evidence as the blue tract; while the third tract is bounded by lines apparently drawn with a yellow pencil and is referred to as the yellow tract. A rough sketch of the pertinent features of the map is hereafter set out, wherein that tract which is referred to in the evidence as the red tract is designated as Tract No. 1 and will be hereinafter so referred to. That portion of the land referred to as the blue tract is designated as Tract No. 2, and that portion referred to in the testimony as the yellow tract is designated Tract No. 3.

ever been used for any purpose other than for burial purposes, all of it having been used and held under the authority covered by the certificate of incorporation. A charge of ten dollars per grave has been made. Of this sum, five dollars has been used to pay for the opening of the grave and the rest of said sum has been used for incidental expenses in maintaining the property. No dividends have been declared nor is it contemplated that dividends or profits will be paid or made from the cemetery.

On December 13, 1927, the City of Birmingham, by and through its City Commission, duly adopted an ordinance which provided for the improvement of Woodlawn Road which, according to the map, abuts that portion of the land described herein as Tract No. 1.

An assessment was levied against Tract No. 1 on the 26th day of March, 1929, in the amount of $900.28. On April 30, 1929, the Greenwood Cemetery Company appealed from the assessment levied against Tract No. 1. Thereafter on the 31st day of December, 1929, the City Commission of the City of Birmingham reduced the amount of the assessment to $750.23,

No bodies have ever been interred on Tracts No. 1 and No. 3, but more than five thousand bodies have been interred upon Tract No. 2. None of the property has whereupon the Greenwood Cemetery Company, acting by and through its duly authorized agents, withdrew its appeal from the assessment.

. Upon default in payment of the assessment after the same had been reduced, the City of Birmingham became the purchaser of said Tract No. 1 at a foreclosure sale of the assessment lien claimed by the City against said property. A deed conveying the said Tract No. 1 to the City of Birmingham, based upon said foreclosure sale, was executed on May 29, 1931, and filed for record on June 8, 1931.

At the time the City of Birmingham made said assessment and sale, there had been no subdivision of the property acquired by the Greenwood Cemetery Company in 1925. There had been no survey setting the land or any part thereof off in lots or blocks by the Greenwood Cemetery Company. The manner in which the City arrived at its description of Tract No. 1, which description was the description contained in the foreclosure deed to the City, was by private survey made by its engineers. Neither the Greenwood Cemetery Company nor any of its duly authorized agents had any knowledge of said survey being made either at the time that it was made or prior to said assessment. At the time of the assessment and sale thereunder, the Greenwood Cemetery Company owned as one tract all of the lands designated herein as Tracts 1, 2 and 3, in that the said Cemetery Company had acquired all of said lands by deed executed in 1925, heretofore referred to.

Complainants now claim that Tract No. 1 is needed by them for burial purposes.

The parties agree that the ordinance providing for the improvement of Woodlawn Road, the assessment against Tract No. 1, the sale thereof, and the deed were all valid in every respect unless said assessment and deed are void for either, or both of the following reasons: (1) That Tract No. 1 was exempt from assessment as cemetery property; (2) the amount of the assessment exceeded the increased value of said Tract No. 1 by reason of the special benefits derived from Woodlawn Road.

It appears that sometime subsequent to the date on which the City of Birmingham secured the deed to Tract No. 1, the Greenwood Cemetery Company went into the hands of a receiver. In July of 1939 a decree of the Circuit Court of Jefferson County was rendered to the effect that the management and control of the cemetery under the laws of the State of Alabama became a charitable trust for the benefit of those that had been interred therein and for others who might receive burial in such cemetery. The complainants, as trustees, were vested with the title to the property and charged with the duty and responsibility to exercise supervision over the lands and cemetery and directed to administer the trust as a charitable trust with authority to dispose of lots, plots of ground for burial purposes to those who desire to buy cemetery lots upon such terms and conditions as are usual in the conduct of such an institution and which might have been exercised by a body corporate in such cases provided.

The aforesaid action of the equity court of Jefferson County came about as the result of a petition filed by various colored societies or civic groups through designated parties.

The complainants thereupon took possession of all of the tracts, cleaned up and beautified Tract No. 2, which had been permitted to grow up in weeds and undergrowth. Various societies and individuals at the solicitation of complainants have contributed or donated money to the complainants, as trustees, all of which has been used strictly in and about the beautification of and the care of said Tract No. 2.

When this suit was filed the complainants were in possession of all of the property, including Tracts 1, 2 and 3, but the City of Birmingham was claiming title to Tract 1 by virtue of the foreclosure deed.

Two members of the appraisal committee of the Birmingham Real Estate Board called by complainants testified that in April, 1943, they inspected and appraised the property involved in this suit and concluded that the property had not been enhanced in value as a result of the paving of the Woodlawn Road in front of Tract 1. It appears that this appraisal was based primarily on the conclusion of the said appraisers that the property had been permanently dedicated as a cemetery for

negroes prior to 1927 and that such property could not be used for any other purpose.

The decree rendered by the trial court denying the relief prayed for by complainants is as follows:

"This cause coming on to be heard is submitted for final decree upon the pleadings and proof as noted. The chief question to be decided is whether or not the property subject matter of the suit could be legally assessed for Municipal betterments under a City Ordinance adopted in 1927. The Court is of the opinion that under the facts presented, the City did have such authority. The question as to whether the improvements enhanced the value of the land, and other questions, such as the alleged irregularity as to the area charged with the value of improvements, are not now litigable. As to whether or not there was an accord and satisfaction or a presently enforceable agreement made between the cemetery company and the City in 1927, reducing the assessment, is not presented for decision here. It is therefore,

"Ordered, adjudged and decreed by the Court that complainants be and they are hereby denied the relief prayed and said cause is hereby dismissed."

■ We think the trial court correctly held that the question as to whether or not the assessment against the property of Greenwood Cemetery Company exceeded the increased value of such property by reason of the special benefits derived from the improvements could not be litigated in this suit. Complainants admit that the ordinance, assessment, sale and deed were all in accord with the statutes relating to municipal improvements and assessments thereunder and that the proceedings were in all respects regular. The Greenwood Cemetery Company, through its duly authorized agents, appealed from the assessment but dismissed their appeal when the City reduced the amount of the assessment. They cannot now in a suit of this nature question the proceedings on the ground that the cost assessed against the property was in excess of the benefits derived from the improvements. Section 535, Title 37, Code of 1940; § 2196, Code of 1923. In

the case of City of Woodlawn v. Durham, 162 Ala. 565, 50 So. 356, 357, it was said: "The appellee attempted to avoid the assessment, levy, and liability by denying that the improvement in front of his property was well done, or done in accordance with the specifications or contract between the city and the contractors, and in accordance with the charter and ordinance provisions on the subject, and averring that the work as done was of no benefit to the property, and that he was charged as for other items than the improvements. These questions could not be litigated in this suit. He should have made this defense at the confirmation of the assessments by the municipal board, and if not satisfied with the assessment and levy made by the municipality he should have appealed from that assessment. Then he could have litigated these questions. Notice and publication of the hearings for the assessments and confirmation, having been given as provided by law, and he not having appeared and contested as provided by law, the decree, orders, or judgments of confirmation were binding upon the property owners." To like effect are the following decisions of this court: Ex parte Gudenrath in re City of Huntsville v. Gudenrath, 194 Ala. 568, 69 So. 629; Day v. City of Montgomery, 207 Ala. 644, 93 So. 609; City of Birmingham v. Wills, 178 Ala. 198, 59 So. 173, Ann. Cas.1915B, 746; Florence Gin Co. v. City of Florence, 226 Ala. 478, 147 So. 417; Armstrong v. Williamson & Wilson, 220 Ala. 415, 125 So. 681; Wynn v. First Nat. Bank of Dothan, 229 Ala. 639, 159 So. 58.

■ Likewise the complainants are now estopped from assailing the assessment on the ground that the Cemetery Company owned and held all of the property as one unit and that the City was without authority to levy the assessment against Tract No. 1 as a separate parcel in accordance with a survey made by the City without the knowledge and consent of the Cemetery Company. Complainants admit that the proceedings were regular in all respects in accordance with the statutory provisions relating to assessments by municipalities for street improvements. This is an admission that the assessment roll showing the description of the property, the

amount of the assessment, etc., was delivered to the City Clerk and was open for inspection in his office prior to the day set for hearing of objections by property owners. Sections 2190–2192, Code of 1923, §§ 529–531, Title 37, Code of 1940. It is also an admission that the City Clerk gave notice by publication that the said assessment roll had been delivered to him and was open for inspection. Section 2192, Code of 1923, § 531, Title 37, Code of 1940. Personal notice of assessment is not essential when publication is duly made. Armstrong v. Williamson & Wilson, supra. It does not appear that any objection was interposed as to the description of the property assessed and no appeal was perfected. The proceedings being regular, complainants are estopped from assailing the assessment on this ground in this proceeding. Peoples v. State Security Bank, 218 Ala. 534, 119 So. 226; City of Birmingham v. Terrell, 229 Ala. 523, 158 So. 748; Jasper Land Co. v. City of Jasper, 220 Ala. 639, 127 So. 210.

The next question for consideration is the liability vel non of the property for street improvements.

 Complainants insist that Tract No. 1, as a part of the cemetery property, was exempt from assessment for street improvements by virtue of Section 91 of the Constitution of 1901. Even if it be conceded that the property assessed was a part of a cemetery, Section 91 affords no exemption from liability for municipal improvements. This was expressly held in the case of Jones et al. v. Lacey, 220 Ala. 390, 125 So. 635, 637, wherein it is said: "Section 91 of the Constitution of 1901 forbids the taxation of cemeteries, but, as pointed out in the case of Huntsville v. Madison County, 166 Ala. 389, 52 So. 326, 139 Am.St.Rep. 45, this did not necessarily exempt the property from liability for special improvements." To like effect are the following cases: Alldredge v. Dunlap, 240 Ala. 27, 197 So. 36; Jefferson County v. City of Birmingham, 235 Ala. 199, 178 So. 226; City of Birmingham v. State ex rel. Carmichael, Atty. Gen., 233 Ala. 138, 170 So. 64; State v. City of Montgomery, 228 Ala. 93, 151 So. 856.

It is also insisted that Sections 89 and 91 of the Constitution should be considered together and that inasmuch as Section 91 prevents the taxation of cemeteries by the State, the legislature cannot authorize a municipality to assess cemetery property for municipal improvements, as such legislative action would be inconsistent with the general laws of the State and therefore violative of Section 89. This argument is, of course, unsound, as Section 91 is a restriction upon the legislature as to direct ad valorem taxes and has no application to local assessments for public improvements, as was above pointed out.

The effect of § 7885, Code of 1923, § 628, Title 7, Code of 1940, upon the assessment of the property here involved must next be considered. Said section is as follows: "In favor of such resident there shall also be exempt from levy and sale, under execution or other process, any lot or lots in cemeteries, or elsewhere, set apart or used as a burial place for himself or family, and any pew or seat in any church or other place of worship, held and occupied by him for the use of himself or family."

In Jones et al. v. Lacey, supra, said § 7885, Code of 1923, was construed as applying not only to sales under execution, but other process, including a sale to enforce a lien for public improvements; and that since the only method of collecting an assessment for street improvements was by a proceeding in rem such property as comes within the scope of said section is exempt from such an assessment.

While it was held that the property involved in the case of Jones et al. v. Lacey, supra, was exempt from assessment for municipal improvements, the holding was limited to the facts in that case, as is shown by the following quotation from the opinion: "This holding must be confined to the case at hand; that is, a free public cemetery wherein the space is practically filled up with the graves of the dead and the enforcement of the assessment lien would involve a sale of the space occupied by a grave or graves. We intend no expression as to a result in case of a cemetery operated for the sale of lots for profits which may have lots on the market for sale and

234

which may not have been acquired and used for burial purposes."

At the time the assessment against the property here involved became final, the property was owned by a cemetery company, organized under the general statutes relating to the formation of corporations for the purpose of carrying on any lawful business or businesses of any kind or nature whatsoever. The objects of the corporation as shown by its certificate of incorporation clearly indicate that the corporation was organized primarily for the purpose of making profit out of the sale of burial lots and graves. The fact that the cemetery company was unsuccessfully operated and that no profits were made nor dividends paid cannot affect the nature of the corporation. The Greenwood Cemetery Company at the time the assessment was made against its property was not a "free public cemetery." The fact that the decree of the Circuit Court of Jefferson County, rendered in July of 1939, declared that the management and control of the Greenwood Cemetery became a charitable trust under the laws of Alabama has no bearing on the question as to the liability vel non of the property for assessment. The Greenwood Cemetery Company was not a charitable institution at the time of the assessment. The decree declaring that the management and control of the Greenwood Cemetery became a charitable trust was evidently based on the terms of an act approved July 2, 1931, General Acts 1931, page 393, which said act is now codified as §§ 220–223, Title 12, Code 1940. The deed conveying the property to the City was executed on May 29, 1931, and filed for record on June 8, 1931.

In view of the fact that the assessment was against the property of a cemetery company operated for the sale of lots or graves for profit and there were no graves on the property assessed, we are of the opinion that § 7885, Code 1923, § 628, Title 7, Code of 1940, does not operate to exempt said property from assessment for municipal improvements. That portion of the land of the cemetery company which was assessed has not become affected by any public use nor does it appear to have

been in any wise irrevocably dedicated as a place of burial.

No good reason suggests itself for holding that the legislature intended for § 7885, Code of 1923, § 628, Title 7, Code of 1940, to enable cemetery companies formed primarily for gain to escape the burden of special assessments on property wherein the dead are not interred. Said section affords its protection to the sepulchers of the dead, not to cemetery companies; to lots set aside or used as a burial place. We think this is clearly expressed in the very language of the statute. The exemption from levy and sale, under execution or other process, relates to "any *lot* or *lots* in cemeteries, or elsewhere, set apart or used as a burial place for himself or family." (Emphasis supplied)

Our conclusion is that the assignments of error are not well taken and that the decree is due to be affirmed. It is so ordered.

Affirmed.

All the Justices concur.