HEUSTESS v. HEARIN et al.  (3 Div. 711.)

(Supreme Court of Alabama.  April 30, 1925.)

1. **Schools and school districts ⚫➡90—Statute relating to power of county board of education to borrow money and to "pledge" revenue therefor construed.**

School Code 1924, § 104, authorizing county board of education to borrow money and to pledge current revenues therefor, when construed with Const. 1901, §§ 260, 261, 256, and Amend. 3, being article 19, §§ 1–3, *held* to authorize a county board of education which had exhausted public school funds for current year to borrow money to pay salaries of teachers and current expenses for current school year, secured by pledge of revenues for succeeding year; "pledge" meaning to set apart, appropriate, or charge with payment of a specific obligation authorized by law.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Pledge.]

2. **Schools and school districts ⚫➡90—Statute relating to power of county boards of education to borrow money must be construed as a whole to ascertain its intent.**

School Code 1924, § 104, authorizing county boards of education to borrow money, being a grant of power and defining extent and limits of such power, must be construed as a whole to ascertain its intent.

3. **Constitutional law ⚫➡70(3)—Wisdom of conferring power on county boards of education to draw on future revenues is legislative question.**

Wisdom or expediency of conferring power on county boards of education to draw on future revenues is a legislative and not a judicial question.

Appeal from Circuit Court, Montgomery County; Walter B. Jones, Judge.

Bill for injunction by J. W. Heustess against J. B. Hearin and others, as members of the County Board of Education of Montgomery County. From a decree dismissing the bill, complainant appeals. Affirmed.

Thomas B. Hill, Jr., of Montgomery, for appellant.

It is not permissible for the board to pledge unearned revenues; the only authority to borrow is contained in section 104 of the School Code. 15 C. J. 573; Blumberg Shoe Co. v. Phœnix Assur. Co., 203 Ala. 552, 84

So. 763; Weakley v. Henry, 204 Ala. 468, 86 So. 46; Simpson v. Lauderdale County, 56 Ala. 64; Harrington v. State, 200 Ala. 480, 76 So. 422.

Rushton, Crenshaw & Rushton, of Montgomery, for appellees.

If there exists any conflict between the first and second sentences of section 104 of the School Code, the latter will control. Williams v. State, 197 Ala. 54, 72 So. 330. The board has the right to anticipate its revenues actually assessed for payment of ordinary current obligations. Brown v. Gay-Padgett Co., 188 Ala. 423, 66 So. 161; Talley v. Com'rs, 175 Ala. 644, 39 So. 167; Eutaw v. Coleman, 189 Ala. 164, 66 So. 464; Board of Rev. v. Merrill, 193 Ala. 521, 68 So. 971; Littlejohn v. Littlejohn, 195 Ala. 614, 71 So. 448; Board of Rev. v. Farson, 197 Ala. 375, 72 So. 613, L. R. A. 1918B, 881. The fund collected under the three-mill tax is under the control of county board of education. Kimmons v. Board, 204 Ala. 384, 85 So. 774.

BOULDIN, J. This is a taxpayers' bill in equity to enjoin the county board of education from borrowing money for current uses to become a charge upon the revenues of the succeeding year. The bill avers that the county board of education of Montgomery county, having exhausted the public school funds for the school year beginning October 1, 1924, and ending September 30, 1925, is preparing to borrow money for the purpose of paying salaries of teachers and current expenses for the current school year, and as security for such loan to pledge the revenues to be received for the school year beginning October 1, 1925; that the county board of education is without authority of law to anticipate and pledge the revenues of one year for use during another and preceding year.

The answer shows the county board of education has entered into contracts with teachers for the public schools of Montgomery county on the basis of a 36-week school year; that the funds of the current year are insufficient to meet such contracts; that the board is arranging to borrow some $15,000 and issue an interest-bearing warrant on the treasurer of the public school fund of the county, payable out of funds to be derived from a special three-mill county school tax levied and assessed for the year beginning October 1, 1924, and to be collected and become available on and after October 1, 1925.

The hearing was upon bill and answer. From a decree dismissing the bill, complainant appeals.

The case turns upon the construction of section 104, School Code of Alabama 1924, which reads:

"Authority of County Board to Borrow Money.—The county board of education shall have authority upon the recommendation of the county superintendent of education, to borrow money on the credit of the school fund of the county to meet salaries of teachers and current expenses when the current funds on hand are not sufficient to meet the same, to be secured by a pledge of the current revenues of the year. All such current loans, except such as are based on county and district local tax proceeds, shall be paid within the school year in which such current loans are made, and from the funds accruing for the support of the schools within such given school year. The amount so borrowed shall at no time exceed one-third of the sum estimated for current expenses, as shown by the school budget for that year."

The "school fund of the county" includes the proceeds of a state three-mill tax and appropriations by the Legislature, pursuant to section 260 of the Constitution of 1901. The Constitution fixes the apportionment of this fund among the counties (section 256), and puts a limitation upon the use of this fund (section 261).

By amendment to the Constitution any county may, upon approval of a vote of the qualified electors therein, levy a special three-mill county school tax. Const. art. 19, § 1 (Amend. 3). The funds arising from this tax shall be "apportioned and expended as the law directs." Section 3.

When a county has voted and levied the three-mill tax, any school district therein may, by popular vote, levy a special district school tax, not exceeding three mills, to be expended exclusively for the benefit of the district "as the law may direct." Sections 2 and 3.

Section 104 of the School Code is to be construed in the light of these constitutional provisions. It is a grant of power, defines the extent and limits of such power, and must be construed as a whole to ascertain its intent.

[1, 2] One question raised by appellant is thus stated in brief of counsel:

"* * * The value of the pledged property cannot be ascertained at this time, for it has no existence, actual or potential, at the time it is given as security, and hence it cannot be legally pledged."

The term "pledge" in the statute is, of course, not used in the usual sense of a deposit or bailment as security for debt. It means set apart, appropriated, or charged with the payment of a specific obligation authorized by law. In such sense funds to accrue in future may be, and continually are, pledged by counties, cities, and other governmental agencies, to secure bonds, warrants, or other obligations. That the pledgee may, by appropriate remedy, require such revenues conserved and applied to the secured demand, and may even compel the levy of a

tax when so authorized and required, needs no citation of authority.

The major contention of appellant is that the first sentence of section 104, above, defines and limits the power to pledge revenues to those of the current year; and that the exception in the "second sentence merely draws a distinction between the dates of maturity of the loans based on the county or local district tax proceeds and others."

This insistence recognizes the manifest intent that such loans may be "based on" the revenues derived from the county three-mill tax, and are excepted from the requirement that they shall be repaid out of the revenues of the current year. If such construction be approved, it would open the door to all the evils complained of in drawing upon future revenues for current expenses. Whether pledged or not, if a lawful debt be incurred to be paid out of funds accruing in future, the payment would become a legal duty, and thus deplete the fund as if specially pledged.

The section as a whole shows a purpose to empower the board of education to borrow money and provide a basis of credit therefor, viz. a pledge of revenues—the only source of payment. A loan "based on county * * * local tax proceeds" can mean nothing but "based upon the credit" of such revenues. That credit is made available by a pledge of same.

It seems clear, in view of the constitutional provisions relating to state and county school funds, the statute in question aims that a fuller measure of power over the county funds voted by the people be vested in the educational body chosen by the people to administer their funds.

[3] The wisdom or expediency of conferring power to draw on future revenues is a legislative and not a judicial question. That such power is liable to abuse by an improvident board evidently suggested the limit of the aggregate of outstanding loans fixed in the final sentence of section 104. It is fair to say this record shows no improvidence or abuse of the power conferred. It appears there was an accumulated deficit charged against the revenues of the present year greater than the sum to be borrowed; and that a large part of the county tax is now charged with carrying and retiring warrants issued to erect public school buildings in Montgomery county; that a constructive school program as contemplated will enable the board of education to provide a full-school term now, without depleting revenues for like terms in the future, as the outstanding obligations are retired.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.