179 So. 197

**STATE TAX COMMISSION· v. COUNTY BOARD OF EDUCATION OF JEFFERSON COUNTY.**

6 Div. 252.

Supreme Court of Alabama.

Jan. 13, 1938.

Rehearing Denied Feb. 24, 1938.

A. A. Carmichael, Atty. Gen., Matt H. Murphy, Sp. Asst. Atty. Gen., and Wm. H. Ellis, of Birmingham, for appellant.

Horace C. Wilkinson, of Birmingham, for appellee.

BOULDIN, Justice.

The legislative power to impose an excise tax on counties, municipalities, and other government subdivisions or agencies, engaged in enterprises for which such tax is imposed on private persons or corporations, was considered and upheld in State v. City of Montgomery, 228 Ala. 93, 151 So. 856.

It was observed that it had not theretofore been the policy of the lawmakers of this state to impose such tax. In view of this policy, grounded upon the fact that such tax could be paid only from other tax receipts, it was declared that our gasoline excise tax statutes, as they then read, did not include a municipality buying gasoline in interstate commerce, storing and withdrawing same for the sole use of the city in municipal activities.

Following this decision the statute was amended by express provision that "person" as defined in the act "means and includes persons, corporations, co-partnerships, companies, counties, municipal corporations, school boards, or agencies of the State." General Acts 1935, § 348, schedule 156, p. 508.

Following this amendment, this court has held such excise tax a valid and lawful demand against a municipality, and also against a county, and a lawful charge on tax derived funds of such city or county, and subject to the control of their governing bodies for municipal or county purposes. City of Birmingham v. State, 233 Ala. 138, 170 So. 64; Jefferson County v. State, 233 Ala. 148, 170 So. 70.

By the proceeding, now for review, the County Board of Education sought a declaratory judgment on two contentions:

First. That so much of the amended statute as purports to impose a tax on the storage and withdrawal of gasoline for use in operating motorbusses on the public highways for the transportation of school children to and from consolidated schools under the supervision of the County Board of Education is unconstitutional and void.

Second. "If liable for the tax, the said Board of Education cannot lawfully use any money that it now has, or any money it may hereafter receive that was raised by taxation under existing statutes and constitutional provisions to establish, organize, and maintain a system of public schools in Jefferson County for the purpose of paying the tax the Act above referred to purports to impose."

The trial court declined to pass upon the first proposition, deeming it unnecessary to a decision in the instant case. The second contention was sustained upon grounds best stated in an opinion accompanying the decree, saying:

"It satisfactorily appears that the Jefferson County Board of Education has no surplus funds that may be applied to the payment of this tax. All of its funds are needed for current operating expenses, and even with a full realization of every expected item of revenue, the Board of Education will need about $111,000.00 more in order to operate the schools a full nine-months term the current school year.

"Unlike a municipality or a county, a Board of Education has no funds that may be applied to general purposes. All money entrusted to the Board of Education in school money, raised pursuant to the Constitution and Statutes of Alabama solely for one purpose, clearly expressed in the law, viz: the support and maintenance of the public schools. Constitution of Alabama, Article XIV, Article XIX, Local Laws of Jefferson County, Section 1650. It is a criminal offense to divert school money to any purpose whatsoever except for the purposes set out in the Constitution. Acts Extra Session 1932, Page 86. To use the money for any other purpose would be a diversion of trust funds. Hall v. Blan, 227 Ala. 64, 148 So. 601.

"The use of school money to pay taxes on the withdrawal of gasoline used in transporting school children to and from school is not one of the purposes set out in the Constitution or the Statutes. The Court therefore concludes that any of the money the Jefferson County Board of Education has received, or may receive, that was levied and collected under the Constitutional and statutory provisions now in force and

effect, for the support and maintenance of the public schools, is not available for application to the claim for tax due or to become due."

■ Manifestly this is to be reviewed on the assumption that the statute extending this tax burden to school boards lawfully engaged in an enterprise for which the excise tax is imposed is valid. We need do no more than refer to our cases above cited.

That "school boards" includes county boards of education is not questioned; nor reasonably debatable.

■ The record fully discloses that the County Board of Education of Jefferson County is engaged in the purchase of gasoline at wholesale in interstate commerce, storing the same in this state, withdrawing and using same in the operation of school busses on the public highways, and for such purpose is using public school funds subject to its disposition. Some question is mooted in brief as to the power of the Legislature to enact section 100 of the School Code 1927, authorizing this activity as a part of a public school system for which public school funds are raised.

No such question is raised by this record. This is not to intimate there is any merit in such suggestion. Many cases have recognized this as a lawful activity of county boards of education. The outlays therefor are necessarily from school funds, raised under constitutional and statutory provisions for the operation and maintenance of a public school system throughout the state. County boards of education have no other funds. For like reasons, it is manifest the excise tax imposed on school boards is intended to become a lawful charge on public school funds, and payable therefrom. So the issue reduces itself to the inquiry whether the excise tax act is valid in that regard.

■■ The state of Alabama is now engaged in two great enterprises, one the creation and maintenance of a system of public schools; the other the construction and maintenance of a system of public highways, including bridges. Both are recognized as constitutional functions of government. State highway construction had its origin in Amendment No. 1, to our present Constitution, commonly known as the Bankhead Amendment of 1908. Later, followed Amendment No. 11, article 20, and still later Amendment 14, Article 20A. By express mandate of this latter amendment the first excise tax on gasoline was levied by legislative act, and payment of a road bond issue authorized by such amendment made a first charge on such funds. By successive acts further excise taxes were levied, culminating in the consolidated act of 1935, supra, section 348, schedule 156.1, under which a gross levy of 6 cents per gallon is made and devoted, after payment of first charges thereon, to the construction and maintenance of a system of public roads and bridges, county roads, state roads, and federal aid roads.

While the excise tax in this instance is levied for the privilege of "storing" gasoline, it is common knowledge, and the manifest intent of the lawmakers, that the tax burden be passed on to the consumer. These unusual and onerous levies are based on the fact that in the main gasoline is consumed as a fuel for motor vehicles on the public highways. The interests benefited by highways are required to contribute through these taxes to the construction and maintenance thereof. That such benefit is a proper basis for the imposition of such taxes has been settled in this state since Kennamer v. State, 150 Ala. 74, 43 So. 482, 483. See, also, Hill v. Moody, 207 Ala. 325, 93 So. 422; Mills v. Court of Com'rs, 204 Ala. 40, 85 So. 564; Madison County v. Gwathney, 212 Ala. 566, 103 So. 656.

■ Since the use of highways for the transportation of school children by motorbus has been made an integral part of our public school system, expenditures for that purpose of necessity become outlays for the operation and support of the public schools. Now comes the constitutional lawmaking body, composed of legislators chosen as the direct representatives of their constituents, and says, as incident to such activity, the school funds subject to the control of county boards are charged with this excise tax used to provide road facilities for such transportation. The gallonage stored, withdrawn, and used in transportation is the measure of the benefit of using the public highway.

This law imposes on one state agency a tax in aid of another state agency for the benefits the former derives from the latter. That this, in the absence of constitutional restriction, may be done as a means of balancing the income from public revenue raised by legislative act is not doubted.

The chief point on which the act, if valid, is said not to authorize the use of public school funds in payment of the tax is that all public school funds, raised pursuant to constitutional mandate or by legislative enactment, are trust funds for the support and maintenance of public schools; that this tax is not for the support and maintenance of schools; and the Legislature is without power to divert funds raised or appropriated for public school purposes to the payment of this tax.

Without question the Legislature has plenary power to devise and set up a system of public schools. Section 256 is a constitutional mandate to that end.

The same lawmaking power which has set up our school system, including the transportation of school children by motor-bus on the highways, and has made appropriations for the operation of such system, enacted this tax statute.

The inexorable logic of the situation is that the Legislature has deemed this tax so related to the public school system, including transportation, that it becomes a proper charge on the school funds.

The same Legislature which imposed this tax made the appropriations of school funds, which in large part constitute the funds in the hands of the county board of education from year to year.

Some suggestion is made in brief to the effect that this tax could be paid from surplus school funds, after all other lawful outlays to maintain adequate schools are made.

The view of the trial court, the more logical in our opinion, is that neither present nor future funds raised or appropriated for public schools could be used in payment of this tax because not for support and maintenance of the schools.

It would seem to follow from this latter view, that, if valid, the tax could be paid solely from a specific appropriation for the purpose.

We are not in accord with either view. We are persuaded it was within the power of the Legislature to impose this tax as a charge on the school funds in the hands of the school board, but subject to contract rights of pledgees under the law. This act is within the plenary power to set up a school system, define its activities, and the legitimate charges on school funds.

If the Board of Education had purchased its gasoline from a distributor who had paid the tax, and so used school funds to pay the added price, it does not seem to be questioned this would have been a legitimate use of school funds.

In the frugal and efficient performance of public duty the Board of Education of Jefferson County chose to economize on transportation expenses by purchasing a gasoline supply in interstate commerce, storing it and withdrawing as used, and, as the law stood before the Act of 1935, avoid this tax burden. But the lawmakers interposed to enact that in such event the tax must be paid into the road funds for use in maintaining the highways as other persons pay for like use.

In our opinion this was a matter of legislative policy and wisdom, not one of legislative power.

As of course administrative bodies or officers cannot divert public funds from the uses to which they are devoted by law.

This rule has no application to the lawmaking power whose prerogative it is to declare the public use to which funds of its own creation shall be devoted.

Most of the evidence in the record and argument in brief is devoted to the issue which appears to have been controlling with the trial court as disclosed in his opinion above.

Other statutes are cited expressive of a public policy to maintain an adequate system of public schools for a full term, declaring public education an essential function of state government on a parity with the legislative, executive, and judicial departments, entitled to like treatment in prorating appropriations, etc. All this calls for no decision at our hands.

However broad and insistent legislative policies may be declared, when the same Legislature by express enactment imposes a specific burden on school revenues, such enactment, if valid, modifies, repeals, or nullifies the former to that extent. If by express law outlays are required which handicap and render impractical the accomplishment of the full measure of public education expected of boards of education, it is not for them nor the courts to ignore the law. Such arguments are for legislative halls.

Taxes are in the nature of fixed charges, first charges on funds in the hands of public authorities, as against other law-

394

ful charges wherein public authorities may exercise a discretion and judgment in the allocation of funds to accomplish the public purposes in hand. Jefferson County v. State, supra; Brown, Treasurer v. Gay-Padgett Hdw. Co., 188 Ala. 423, 66. So. 161.

Finally, a suggestion is made that such expenditure is in violation of Const. 1901, § 261, providing that not over 4 per cent. of the moneys raised or appropriated for the support of public schools shall be used or expended otherwise than for the payment of teachers.

Just what funds of the numerous school levies and appropriations are within the 4 per cent. clause, and the consequent legality or illegality of the multiform outlays which the Legislature has authorized as disclosed in the School Code and later statutes, we would not undertake to consider. This would involve a wide range of inquiry not warranted by anything in this record, assuming the Legislature has not suspended section 261 as therein provided. We merely cite Opinions of the Justices, 215 Ala. 524, 111 So. 312; Heustess v. Hearin, 213 Ala. 106, 107, 104 So. 273; City Board of Education of Athens v. Williams, 231 Ala. 137, 163 So. 802.

Suffice to say the detailed expenditures of the Board of Education as disclosed by the record show expenditures within the control of the board many times 4 per cent. of the total fund expended.

The cost of operation of school plants, and of transportation of pupils, each exceeds 4 per cent. of the amount paid teachers. Operation of adult schools is wholly statutory and not within the system of public schools defined in section 260 of the constitution.

We are not called upon to review the legality of these expenditures from the public school funds under the control of the board. They are listed as legitimate expenditures to show no funds are available to pay the tax; so we simply hold the record does not disclose any conflict between this statute and the 4 per cent. provision of section 261.

The decree of the court below is reversed, and the cause remanded for further proceedings in conformity with this opinion.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.