187 So. 414

**COUNTY BOARD OF EDUCATION OF JEFFERSON COUNTY v. STATE ex rel. CARMICHAEL, Atty. Gen.**

**SAME v. STATE TAX COMMISSION.**

6 Div. 408, 409.

Supreme Court of Alabama.

Jan. 31, 1939.

Rehearing Denied March 23, 1939.

Matt H. Murphy and Wm. H. Ellis, both of Birmingham, for appellees.

Horace C. Wilkinson, of Birmingham, for appellant.

THOMAS, Justice.

The two appeals, 6 Div. 408 and 6 Div. 409, are submitted, argued and assigned for decision as one case. They are so considered.

A statement of the case is made by counsel for appellant, which we reproduce, in part, as follows:

In a declaratory judgment proceeding between the Board of Education of Jefferson County, as originally entitled, and the State Tax Commission of Alabama, the Board of Education asked the court below to declare:

"First. That so much of Article 13, Chapter 4, of the 1935 Revenue Act (Acts 1935, pages 508–516) as purports to impose an excise tax of six cents per gallon on gasoline stored and withdrawn from storage by the Board of Education and used exclusively for the transportation of school children in Jefferson County, Alabama, is unconstitutional, null, and void, and of no effect as running counter to Article 14, Sections 256–261, inclusive, and Section 91 of the Constitution of the State of Alabama.

"Second. That school money in the custody of the Board of Education of Jefferson County could not be used to pay taxes on the withdrawal of gasoline used in transporting school children to and from school."

When the cause was first submitted, the trial court held that the Board of Education could not use school money to pay the gasoline tax. That holding was appealed to this court and in State Tax Commission v. County Board of Education, 235 Ala. 388, 179 So. 197, on the assumption that the revenue law purporting to impose the tax was a valid enactment, the cause was reversed and remanded.

After that remandment to the court below, the petition for a declaratory judgment was amended to have a decision, first, as to the constitutionality of the statute; second, as to the authority of the Board of Education to use money received by it in payment of appropriations made by the Legislature for the support and maintenance of the public schools, or from special taxes levied and loans made for that purpose, in payment of said gasoline tax; third, whether current school revenue could be used to pay obligations imposed or created in a prior fiscal year.

At that stage of the proceedings the State filed a suit on the law side of the docket for the taxes and interest thereon, and the Board of Education interposed the aforesaid defenses.

The trial court expressed the view that the Revenue Law of 1935 purporting to impose the tax on gasoline used by the Board of Education was a valid enactment, that any school revenue, including poll taxes, could be used to extinguish the claim for gas tax, that the claim for gas tax was subordinate only to: "(a) The liability of said Board to pay taxes pledged to the payment of principal and interest upon legally authorized and issued bonds and warrants; and (b) the payment of salaries to teachers."

It was further ruled in the declaratory judgment proceeding that any funds of the Board of Education which are not the allocated portion of city boards of education in Jefferson County, Alabama, and not pledged to the payment of principal and interest upon legally authorized bonds and warrants, and not used for the payment of salaries to teachers, must be used by the Board toward the extinguishment of said Board's liability for said gasoline taxes until paid in full. The Court also rendered a judgment against the Board of Education in the proceeding at law for $15,225.88.

The two cases were tried on one agreed statement of facts, set out in the record. In such statement it is indicated that the Board of Education of Jefferson County started the fiscal year, beginning October 1,

1935 (the day the 1935 Revenue Act became effective), with a deficit of $11,558.86; and from that date to June 30, 1938, the Board of Education received $7,153,883.60. This income is itemized in the transcript in the declaratory judgment proceeding; and is shown to come from appropriations made by the legislature "for the support and maintenance of the public schools," from taxes levied and collected "for the support and maintenance of the public schools," and from some short term loans made by the Board of Education.

The Jefferson County schools closed on May 14, 1937, twenty days short of a normal term, and on April 29, 1938, twenty days short of a normal term. The disbursements of the Board of Education from October 1, 1935, to June 30, 1938, were $7,147,469.94; and they are likewise itemized in the declaratory judgment proceeding. This left an apparent balance on hand June 30, 1938, of $6,413.67; and of this $3,681.58 was due the cities of Birmingham, Bessemer, Fairfield, and Tarrant, Alabama, as their allocated and undistributed share of funds received by the Jefferson County Board of Education, which left an apparent net balance on hand June 30, 1938, of $2,732.08. There was, however, an outstanding deficit of $11,558.86, so that on June 30, 1938, the Board of Education of Jefferson County, Alabama, had an actual deficit of $8,826.78.

The budget for the fiscal year 1938–39 was introduced in evidence. This budget is for a seven months school, forty days short of a normal term. It shows estimated revenue receipts $2,377,171; estimated expenditures of $2,370,901.66, which would leave a balance on hand at the end of the year of $6,269.34, which would further reduce the deficit to $1,557.44, at the close of the school year in 1939. By reducing the school term for the year 1938–1939 to seven months and operating with economy, if the Board of Education of Jefferson County receives one hundred per cent of all expected revenue, it will still have a deficit of $1,557.44 at the close of the current school year.

The appellee's counsel states as additional and fundamental facts that "appellant operated on an annual grand total amount of revenue of $2,397,630.84 for 1935–1936, and $2,571,051.40 for 1936–1937, and its budget for 1938-1939 is based on a smaller estimated amount of total receipts than either year, being $2,377,171.00." It is insisted that there is reason shown why the board will receive approximately $200,000 less revenue for the current year than it actually received "during the fiscal year 1936–1937."

It is stated that "appellee's claim in the law case for gasoline tax on motor fuel used in school busses is for $13,649.76 which covers the period from December 1, 1935, to May 31, 1937, being eighteen calendar months, or $758.32 monthly, or on an annual basis of only $9,099.84." And it is further insisted by appellee that these totals show that the contention is not well founded that the payment of this tax will cause the premature closing of the schools of Jefferson County, Alabama.

From the adverse rulings of the trial court the Board of Education of Jefferson County appeals.

It is insisted by the appeal and argument of distinguished counsel that so much of the Revenue Act of 1935 as attempts to impose a tax on the gasoline it uses for the transportation of school children is unconstitutional; that the funds received by it from appropriations made for the support and maintenance of the public school or from taxes levied for that purpose cannot be used to pay the gas tax in question; and that the appellants cannot use current revenue that is needed for current school operation to pay obligations imposed or incurred in a prior fiscal year. It is further insisted that the tax imposed on gasoline used by Boards of Education for the transportation of school children is a property tax and not an excise tax, and therefore an unconstitutional levy on the educational trust funds.

It is insisted by appellee that this is in the nature of a rehearing of the case of State Tax Commission v. Board of Education of Jefferson County, 235 Ala. 388, 179 So. 197. In that decision there was the declaration that the legislature may impose an excise tax on counties, municipalities and other governmental agencies, which are engaged in enterprises for which such tax is imposed on persons or companies so engaged; and the tax in question was an excise and not a property tax, and not within the provisions of Section 91 of the Constitution. Said provision of the Constitution is that the "legislature shall not tax the property, real or personal, of the state, counties, or other municipal corporations, or cemeteries * * *."

The case of State v. City of Montgomery, 228 Ala. 93, 151 So. 856, cited and approved in State Tax Commission v. Board

of Education of Jefferson County, supra, contains the declaration that the *privilege of storing* in bulk an inflammable article, such as gasoline, within a city is the just basis for an excise tax, and as levied in the Revenue law is not a property tax; that it is immaterial *to what use* the gasoline *so stored* is subjected, when it is withdrawn from such storage in the state, it was subject to the excise tax in question. The Court said, in that case [page 857]:

"There is a clear distinction between (1) an excise tax upon the business, occupation, or privilege of owning, storing, and withdrawing gasoline, imposed not only for revenue but also because it is a dangerous explosive, and within the police power of the state, and (2) a tax upon the separate acts of the owner in taking his property out of storage for his own use; for this is a property tax. This distinction is clearly defined in Dawson v. Kentucky Dist. Co., 255 U.S. 288, 41 S.Ct. 272, 65 L.Ed. 638.

\* \* \* \* \* \*

"Since the privilege of storing is the basis of the tax, and for that purpose an excise may be levied, it is not controlled by section 91 of the Constitution, and it is immaterial to what use it is put after it is withdrawn from storage. Crockett v. Salt Lake County, 72 Utah, 337, 270 P. 142, 60 A. L.R. 867."

It is further established by recent decision in the case of State Tax Commission v. Board of Education of Jefferson County, supra, where the statutes and more recent amendments to the Constitution were considered, that [page 198]:

"Following this decision the statute was amended by express provision that 'person' as defined in the act 'means and includes persons, corporations, co-partnerships, companies, counties, municipal corporations, school boards, or agencies of the State.' General Acts 1935, § 348, schedule 156, p. 508.

"Following this amendment, this court has held such excise tax a valid and lawful demand against a municipality, 'and also against a county, and a lawful charge on tax derived funds of such city or county, and subject to the control of their governing bodies for municipal or county purposes. City of Birmingham v. State, 233 Ala. 138, 170 So. 64; Jefferson County v. State, 233 Ala. 148, 170 So. 70."

The further decisions were:

"The same lawmaking power which has set up our school system, including the transportation of school children by motorbus on the highways, and has made appropriations for the operation of such system, enacted this tax statute.

"The inexorable logic of the situation is that the Legislature has deemed this tax so related to the public school system, including transportation, that it becomes a proper charge on the school funds.

"The same Legislature which imposed this tax made the appropriations of school funds, which in large part constitute the funds in the hands of the county board of education from year to year.

\* \* \* \* \* \*

"Taxes are in the nature of fixed charges, first charges on funds in the hands of public authorities, as against other lawful charges wherein public authorities may exercise a discretion and judgment in the allocation of funds to accomplish the public purposes in hand. Jefferson County v. State, supra; Brown, Treasurer v. Gay-Padgett Hdw. Co., 188 Ala. 423, 66 So. 161."

See, also, Scott v. Mattingly, 236 Ala. 254, 182 So. 24.

It is further decided on the former appeal in the case of State Tax Commission v. Board of Education of Jefferson County, supra, that the operation of school busses on public highways is 'a lawful activity of the board of education; that an excise tax is a burden passed on to the consumer though the tax is levied for the privilege (in this case, the privilege of withdrawing gasoline from storage to operate school busses); that such excise tax of a state agency in aid of another state agency for the benefit of the former agency, derives from the latter a benefit, and in the absence of constitutional restriction is permissible. It is further decided that such excise tax on gasoline used in motor busses for transporting school children and teachers as a charge on school funds in the hands of the school board is authorized. This latter statement, however, it is insisted, was on the assumption that the statute was constitutional, and this is the question now presented for decision.

The excise tax imposed on the withdrawal of gasoline [Article 13, Chap. 4, section 348, schedules 156–156.20, Acts of 1935, pp. 441, 508–516] was to create a sinking fund for payment of the second road bonds for construction, maintenance and improve-

ment of public highways, roads and bridges, and was the legislative response of duties imposed by the Second Road Bond Amendment, ratified and proclaimed on April 21, 1927, and known as 20A of the Constitution. Said amendment provided, among other things, that it was *"To create a sinking fund for the prompt and faithful payment of the principal and interest on these bonds and for the construction, maintenance and improvement of such public highways, roads, and bridges, the Legislature shall levy an excise tax, in addition to the levy made February 10, 1923, of two cents per gallon upon gasoline or any substitute therefor, or an adequate license or excise tax on any other motive power used to propel auto vehicles.* Such bonds when issued shall be a direct obligation of the State and for the prompt and faithful payment of the principal and the interest thereon the full faith and credit of the State is hereby irrevocably pledged and such bonds shall be exempt forever from taxes of every kind." [Italics supplied.]

The General Acts of Alabama, General Acts Alabama, Regular Session, 1927, Special Session 1926–27, p. 97, included, "An Act To authorize and provide for the issuance and sale of State bonds for the purpose of constructing, improving, repairing and maintaining public roads, highways, and bridges as authorized by the Constitutional Amendment known as Article XXA of the Constitution of. Alabama."

The last named Act, in Section 8, p. 98, prescribed as follows: "The bonds issued under this Act shall be a direct obligation of the State and the full faith and credit of the State is pledged to the prompt payment of the principal and interest thereon. The bonds provided for by this Act are issued under the authority of the amendment to the Constitution known as Article XXA and adopted at an election held on April 12, 1927, authorizing the State to engage in the construction, improvement, repair and maintenance of public roads, highways and bridges in the State of Alabama, and authorizing the issuance and sale of interest bearing negotiable State Bonds in an amount not to exceed the sum of Twenty-five Million ($25,000,000.00) Dollars."

And Section 9 of the same Act, p. 99, provides: "Said Bonds are entitled to the full benefit of the sinking fund provided by said constitutional amendment."

The appellant urges that the language of the amendment is significant. We repeat the language referred to: "The Legislature shall levy an excise tax, in addition to the levy made February .10, 1923, of two cents per gallon upon gasoline or any substitute therefor, *or an adequate license or excise tax on any other motive power used to propel auto vehicles."* [Italics supplied.]

Appellant's counsel says of this last quoted provision, that: "Under the general rule, which was recognized in this State in State v. City of Montgomery, 228 Ala. 93 (151 So. 856) the meaning of this language is that the legislature shall levy an excise tax, in addition to the levy made February 10, 1923, of two cents per gallon upon gasoline, *other than the gasoline of the state, but shall not levy an excise tax upon gasoline of the state."* [Parenthesis and italics supplied.]

The reason, it is urged, being that the general rule is that when a tax levy is laid in general terms with nothing to indicate that it was intended to apply to the sovereignty, it will be held not so to apply. City of Huntsville v. Madison County, 166 Ala. 389, 52 So. 326, 139 Am.St.Rep. 45. The last cited case was a paving assessment discussion.

This doctrine, it is said was extended in State v. McCord, 203 Ala. 347, 83 So. 71, wherein it was held that although Section 4049 of the Code of 1907 authorized either party to a civil suit to propound interrogatories to the other party, such statute does not permit interrogatories to be propounded to the State, for the reason that without express legislative declaration, general "words in a statute do not apply to the state, nor affect its rights, unless an intention to the contrary appears." [Page 72.]

The Huntsville Case, supra, was dealt with in Smith v. Franklin County, 221 Ala. 136, 137, 127 So. 904, where the court said: "We infer that this appeal has been inspired by the last paragraph of the opinion in City of Huntsville v. Madison County, 166 Ala. 389, 52 So. 326, 139 Am.St.Rep. 45, in which it was held (1910) that there could be no assessment against county property to meet the cost of street improvement—this for the reason that there could be no increased value to county property, by reason of such improvement. But that was not to hold that the Legislature might not authorize a county voluntarily to contribute to the improvement of a street in a city or town within the county, and certainly,

the fact that the street improved or to be improved is contingent upon county property affords no argument against the constitutionality or legislative wisdom of such a contribution. Nor will it be denied that a county has an interest to be cared for in the highways, whether roads or streets, which lead to its courthouse and other public buildings. Nothing to the contrary of our present opinion was said in City of Huntsville v. Madison County, supra, nor in City of Decatur v. Southern Railway, 187 Ala. 364, 65 So. 536, where in some respects the opinion in City of Huntsville v. Madison County was amplified and explained as intending only that, in the then state of statutory law, there could be no 'personal judgment' against the county."

In State v. City of Montgomery, 228 Ala. 93, 151 So. 856, the authorities are collected and the general rule stated as to when a tax levy is laid in general terms with nothing to indicate that it was intended to apply to a city or county, it will be held not to apply, citing the Huntsville Case, supra.

Before proceeding further to the answer of this question of constitutionality vel non of the instant statute, it will be observed that the same excise tax was upheld as against the city in State v. City of Montgomery, 228 Ala. 93, 151 So. 856; City of Birmingham v. State ex rel. Carmichael, 233 Ala. 138, 170 So. 64; and as against the county in Jefferson County v. State ex rel. Carmichael, 233 Ala. 148, 170 So. 70; and against the County Board of Education in State Tax Commission v. Board of Education of Jefferson County, supra. That is to say, the same tax on subordinate branches of government—by an excise tax on the purchase and storage of gasoline—was held not to be a tax on property of the nature and kind indicated by Section 91, of the Constitution, but was a privilege or excise tax not interdicted by the terms of that section of organic law.

In the light of such decisions by this court, the Legislature passed the Act of September 14, 1935 (Acts of Alabama, 1935, pp. 1167, 1168, § 2), subsequent to the enactment of the Revenue Bill of July 10, 1935, exempting school busses from the license tax that had theretofore been contained in the Act of 1932 (Acts of Alabama, 1932, Extra Session, p. 178, Article 2, § 2 et seq.), exempting school busses, and entitled, "An Act Defining contract carriers and common carriers by motor vehicle not subject to the provisions of the Alabama Motor Carrier Act of 1931;" etc., and a like exemption had not been carried into the Act of July 27, 1931, imposing an excise tax for the stated uses of public roads and bridges. Acts of 1931, p. 859 et seq.

When a full knowledge of the failure of provision for exemption in favor of bus transportation for education purposes, as to the motor fuel used is had, the legislative intent on exemption was limited to the vehicle tax, and this intention of exclusion from the vehicle or license tax (an excise tax) is stated in the Act of Sept. 14, 1935, §§ 2, 3, pp. 1168, 1169, Acts of Alabama, 1935, p. 1167, as follows:.

"There shall be excepted from the provisions of this Act: 1. Motor vehicles while being used exclusively for the transportation of school children and school teachers to and from school, or while being used for any school purposes or any public or community purpose at the direction of or by the authority of the superintendent of education having supervision over the school or schools regularly served by such motor vehicles, and such motor vehicles, while being so used, shall be exempt from any license tax or registration fee required of a contract carrier, a common carrier, or a jitney bus. * * *

"The State of Alabama shall provide at state expense a special license tag to be used on and to designate all motor vehicles used exclusively for the transportation of school children and school teachers to and from school, or while being used for any school purpose or any public or community purpose at the direction of or by authority of the Superintendent of Education having supervision over the school or schools regularly served by such motor vehicles. These tags shall be supplied annually upon requisition to the State Comptroller by the State Superintendent of Education, this requisition to be based upon applications for such license tags made by county and city superintendents of education and approved by county and city boards of education, the application made by each superintendent to give the name and address of the operator of the motor vehicle on which the license tag is to be placed and to contain a certification that said motor vehicle will be used for the purposes designated in this act."

So much for the legislative intent as to exemptions from provisions of the several acts as applied to school busses used in

the transportation of school children and teachers to their respective schools, etc.

What, then, of the insistence of unconstitutionality made by appellant, as to so much of the Revenue Act of July 10, 1935, Acts 1935, p. 508 et seq., passed in compliance with Amendment 20A to the Constitution, ratified and proclaimed on April 21, 1927, Proclamation Records P. 240, as attempts to impose a tax on all gasoline used by school authorities or agents in transportation of school children and teachers?

The Road Bond Amendment made it a duty of the legislature to levy an excise tax on gasoline amounting to two cents per gallon on all automobile and motor fuels for motor driven vehicles to pay the interest on the authorized bond issue for roads and bridges, as indicated above. Acts of 1935, pp. 441, 508 et seq., § 348, Schedules 156, 156.1, 156.2 and 156.10.

The legislature recognized the duty thus imposed and provided these funds as pledged under the constitution, in schedule 156.10 of Acts of 1935, p. 512, and prescribed as follows: "One-third of the proceeds of the excise tax herein imposed, when collected, shall be covered into the State Treasury to the credit of the public road and bridge fund. Such funds shall be primarily charged with the payment of interest and retirement of public road and bridge bonds issued in accordance with the provisions of an amendment to the State Constitution approved by the voters of Alabama at an election held on April 12th, 1927, authorizing the issuance of highway and bridge bonds in the aggregate amounting to Twenty-Five Million Dollars ($25,000.000.00). After paying interest on these bonds, a sufficient sum shall be set aside as a sinking fund, to retire these bonds as they become due. Any residue of such fund, after provision shall have been made for the primary obligations herein set out, may be used by the Highway Commission, with the approval of the Governor, in constructing public roads and bridges within the State as now or may hereafter be provided by law, and in maintaining the public roads and bridges which have been or may hereafter be constructed by the State Highway Commission, in equipping and preparing convicts for use upon the public roads and bridges of this State; for maintenance of such convicts while so at work upon such roads and bridges; for compensating the State for the use of such convicts, and after the payment of the primary obligations the interest on

the bonds issued under authority of Act No. 292 approved August 31, 1927, Acts 1927, p. 278, may be paid out of the residue of the receipts of the gasoline tax collected by the State under this sub-section, after there has been taken from this fund the amount necessary to meet all of the primary purposes to which said gasoline tax fund is pledged under Article XX A, as an amendment to the Constitution of the State, and for such other use upon the public roads and bridges of this State as may be authorized by the Highway Commission with the approval of the Governor. Provided, however, that the residue of such fund shall not be expended contrary to law as it now exists or may hereafter be enacted."

The Act in question, that is to say, levied a total of six cents a gallon tax and allocated it in substance as follows: one third to the counties (Schedule 156.9, p. 511), one third to the State Treasury in compliance with the above amendment (Schedule 156.10) and the other third was divided equally between the State Highway Department for the public road and bridge fund for the particularized purpose of matching Federal funds, and the road and bridge funds of the sixty-seven counties (Schedule 156.11, p. 512). The diversion of the funds going to counties under Schedule 156.9 was declared a misdemeanor punishable by fine not to exceed $1,000 and by imprisonment for not more than twelve months. Acts of 1935, p. 511; See, also, Ramage, Parks & Co. v. Folmar, 214 Ala. 661, 108 So. 580; Lyon v. Shelby County, 235 Ala. 69, 177 So. 306.

The moneys raised by the gasoline taxes are, therefore, trust funds under the provisions of the Constitution, as to part, and under the Act of the Legislature, as to the balance, of such excise taxes. And the levying clause of the Act in question, by virtue of the definition of "person" in schedule 156, clearly covers school boards, such as appellant. General Acts of Alabama, 1935, p. 508, Chapter 4, Article 13.

The objection raised as to why this tax should not apply to school boards is that under Sections 256–260, Article 14, Education, of the Alabama Constitution, and in particular under § 258 of the Constitution is the prescription that all school funds shall be "faithfully applied to the maintenance of the public schools," and likewise, that in Section 259 of the Constitution, as to poll tax collected, which it is stated shall be applied "to the support of the public

schools in the respective counties where collected." Section 257 of the Constitution provides as to funds from the sale of state properties for educational purposes, and states that said funds shall be preserved undiminished and inviolate and "faithfully applied" to the one specific object of the original grants or appropriations. Section 256 of the Constitution is as follows: "The legislature shall establish, organize and maintain a liberal system of public schools throughout the state for the benefit of the children thereof between the ages of seven and twenty-one years. The public school fund *shall be apportioned to the several counties in proportion* to the number of school children of school age therein, and shall be so apportioned to the schools in the districts or townships in the counties as to provide, *as nearly as practicable, school terms of equal duration in such school districts or townships.* Separate schools shall be provided for white and colored children, and no child of either race shall be permitted to attend a school of the other race."

 Appellee's answer to this insistence is well founded. The payment of an excise and privilege tax (Nachman v. State Tax Commission, 233 Ala. 626, 173 So. 25) on gasoline consumed in school busses used exclusively for the transportation of school children or teachers to and from school is, in a sense, an application and payment for an educational purpose, and this was, in effect, the decision in State Tax Commission v. Board of Education of Jefferson County, 235 Ala. 388, 179 So. 197. There is analogy in Scott v. Mattingly, Ala.Sup. 182 So. 24,[1] decided later. In that case the holding was that the county board of education had the right to purchase busses for transportation as educational aid and use. See, also, Lyme High School Ass'n v. Alling, 113 Conn. 200, 154 A. 439; Wright v. A. C. L. Ry. Co., 40 Ga.App. 785, 151 S.E. 553.

It is insisted by appellant that in the case of State v. City of Montgomery, 228 Ala. 93, 151 So. 856, is a statement that there is a clear distinction between an excise tax upon the business, occupation, or privilege of owning, storing, and withdrawing gasoline, imposed not only for revenue but also because it is a dangerous explosive, and within the police power, and a tax upon the separate acts of the owner in taking his property out of storage for his own use; "for this is a property tax." [Page 857.]

In the decision of the Supreme Court of the United States in Graves v. Texas Co., 298 U.S. 393, 56 S.Ct. 818, 80 L.Ed. 1236, it is declared that the privilege of storing is not the thing taxed, because in the absence of withdrawal there is no tax. And that the case is clearly within the classification that the tax is upon the separate act of the owner in taking property from storage.

However, in City of Birmingham v. State, 233 Ala. 138, 170 So. 64, the Graves Case, supra, is cited to the effect that the tax imposed on the stored gasoline is not a direct tax, but on the privilege of withdrawal from storage, and that regardless of ownership, and the amount is measured by the gallonage withdrawn from storage, and therefore an imposition upon the privilege of withdrawing the gasoline from storage as it may be used.

Under the foregoing provisions of law and decisions, the gasoline tax levied and collected in the instant case is money required to be applied in the maintenance of public roads and bridges. In the instant case, its use was necessary in furnishing a material facility in bus transportation of school children and teachers to the public schools. This is a necessary and material part of the State's activities, and due functioning to the end of road building and maintenance, on the one hand, and a right conduct of the public school system, as now organized and conducted, on the other.

 The sovereign State, under its general powers, acting for a public purpose, is engaged in the performance of a governmental function. Its powers to levy excise taxes are within its general powers and its police power of government, as the case may be.

 If under the police power, it is within a power that may not be alienated, surrendered or abridged by the legislature, or by contract between the state and its citizens, or by persons operating and contracting within the state, or by contract between an agency of the state and a citizen thereof. Alabama Water Co. v. City of Attalla, 211 Ala. 301, 100 So. 490.

 This observation is made because some of our decisions, in dealing with the nature of the excise tax before us, have ad-

---

[1] 236 Ala. 254.

verted to the fact that the storage of a dangerous mineral or gas entered into the classification for the imposition of such tax. However, we are of opinion, and hold, that the State, in imposing the tax in question, acted under its general powers and it was in such right that it imposed the several excise taxes as upon vehicles used on the public highways, the tag tax on motor vehicles using the highways, and the tax upon the sale or withdrawal from storage of gas or fuel oils, necessary in the use of motor vehicles whether the same be consumed or not in transportation on public highways. Such is the character, classification or nature of the excise tax we are now considering.

This being understood, we pause to note the rules by which a statute imposing such excise tax is to be tested as to its constitutionality. The decisions on this subject were recently collected in Jefferson County v. Busby, 226 Ala. 293, 148 So. 411. Such decisions are to the effect that statutes are presumed to be valid, and he who challenges has the burden of clearly establishing invalidity; statutes susceptible of two interpretations, the one which upholds will be adopted; classifications employed by the legislature are presumed to be made in good faith; and statutes securing elementary rights are construed in favor of the citizen; and that acts concerning administrative or governmental policy will not be declared invalid unless unconstitutionality appears beyond a reasonable doubt..

The claim of the State being prior to other claims on the part of the fund provided by Schedule 156.11 [Revenue Act of 1935, Acts of Alabama 1935, p. 512], we are of the opinion that it in no wise contravenes Section 256 et seq., of the Constitution. The rule of precedence of other excise taxes was observed in Long et al., Members of the State Tax Commission, v. Alabama Highway Corporation, 234 Ala. 142, 174 So. 41, where the court said [page 43]: "The pledge of the gasoline tax funds in the instant case will not conflict with prior pledges of funds under article 20A of the Constitution, known as Amendment 21, and the acts relating to the Alabama State Bridge Corporation. Gen. Acts 1927, p. 278; Gen.Acts 1935, p. 602. This for the reason that these prior pledges have precedence over this pledge, and the pledge of the funds in this instance will, therefore, be subordinate to these prior pledges, and of consequence not in conflict therewith."

Thus the several excise taxes have been held to apply respectively to the general scheme and purposes in the legislative mind of setting up two great systems of permanent improvement in the State.

The provisions of the statute challenged are not opposed to the provision of the Constitution requiring a faithful application of education trust funds for the purpose of the public schools, and that requiring application of a certain part of the education fund in the township, district or county where collected, and that requiring the apportionment of available educational funds to the several counties in proportion to the number of school children therein, and that requiring due apportionment of such available funds to schools "in the districts or townships in the counties" as provided, as nearly as practicable, school terms of equal duration in such school districts and townships, and in the providing of separate schools for white and colored children; and is not offended by the imposition of the excise tax in question.

That is, for example, the poll tax money collected from the local area in question, and having gone into the school funds and been duly disbursed for the expense of providing and maintaining public schools for and within the respective districts, townships and counties, the fact that the general excise tax on gasoline and fuel oils is required to be paid to the proper disbursing authorities for the construction and maintenance of public roads and bridges in other counties, townships and districts of the state, will not be held to be unlawful application of the school trust funds or general school funds, under the efficient and necessary conduct and maintenance of the public school system. That is, in effect, the holding in the cases cited, and notably in that by Mr. Justice Knight in Scott v. Mattingly, Ala.Sup., 182 So. 24,[1] maintaining the right of operation and maintenance of busses used in a right conduct of the educational system, though such use may extend into other townships, districts or counties. The fact that such busses necessarily traverse the public highways running into different districts, townships and counties has not been urged and held to be an objection to such provision for due transportation of school children and teachers to their respective schools and places of instruction.

[1] 236 Ala. 254.

Nor have such provisions for the purchase, operation, and maintenance of school busses, used in due transportation been thought or held to destroy the right of apportionment of funds to the several counties, in proportion to the number of school children of school age, as required by the constitution in the several districts, townships or counties. This is recognized in the provision that such apportionment be made, "to provide, as nearly as practicable, school terms of equal duration in such school districts or townships. Separate schools shall be provided for white and colored children, * * *." Constitution, § 256, Education.

The result we have announced is not different by reason of the fact that the educational apportionment acts are of date of September 2, 1935 [Acts of Alabama 1935, pp. 742 and 751], and the General Revenue Bill is of date of July 10, 1935, [General Acts of Alabama 1935, p. 256 et seq.].

The result is unchanged by the amendment of January 26, 1937 [Acts of Alabama, Extra Session, 1936–37, p. 16] and of April 16, 1936 [General and Local Acts, Alabama, Extra Session, 1936, p. 92].

In the General and Local Acts of Alabama, Extra Session, 1936–37, p. 16, it is provided:

"'That the appropriations herein made are payable from and after January 1, 1937 out of the Alabama Special Educational Trust Fund, subject to the terms, conditions, provisions, and limitations of the Budget and Financial Control Act, and the General Fund shall be relieved from and after January 1, 1937 from any payment of said appropriations therein contained; provided however that not more than said sums so appropriated respectively shall be paid in the aggregate respectively to those respectively entitled to receive the same from said General Fund and said Alabama Special Educational Trust Fund for the fiscal year beginning October 1, 1936.'

"Section 2. That all laws and parts of laws in conflict with the provisions of this Act be and the same are hereby expressly repealed."

In the General and Local Acts of Alabama, Extra Session, 1936, p. 92, it is provided: "That Section 5 of said Act be and the same is hereby amended to read as follows: 'Section 5. That the appropriations provided in Section 1 of this Act shall be *payable out of funds set aside by the Constitution for the payment of such appro-*

*priations, or where such funds are not set aside by the Constitution·shall be payable from the General Fund of the State;* that the several appropriations herein provided· in Sections 2, 3, 4, and 4½ shall be payable out of the Alabama Special Educational Trust Fund created and set apart for educational purposes by the General Revenue Act approved July 10, 1935, and in the event that such trust fund is not sufficient to cover appropriations in Sections 2, 3, 4, and 4½, then the balance of the same shall be payable out of any other funds in the Treasury not otherwise appropriated.'"

Thus is recognized the fact that the educational fund is fed from the two sources indicated in the Act heretofore adverted to.

In the General Revenue Act of 1935 [General Acts Alabama 1935, p. 256 et seq.], and its Section 405, p. 573, the educational trust fund is indicated, as follows: "Section 405. All revenue collected under the provisions of Section 142, Section 143, Section 145, Section 147, Section 149, and Schedule 91, Schedule 92 of Article XIII; Chapter 7, Article XIII and Chapter 3, Article XIII of this Act, shall be paid to the State Tax Commission of the State of Alabama, by check or draft made payable to the State Treasurer and shall be set apart as a trust fund·for educational purposes only, to be designated as 'The Alabama Special Educational Trust Fund' and shall be kept separate and apart· from all other funds in the State Treasury and shall be paid out by the State Treasurer on lawful appropriations made especially from such funds by the Legislature of Alabama, for educational purposes."

As we understand it, this is recasting the same subject contained in the General Acts of 1926–27 [General Acts Alabama, 1926–27, p. 148, § 2, subsection 2-K].

In Simon's Code is found the allocation of funds to the "Special Educational Trust Fund" under the Acts of 1935 and 1927. They are, as follows: Simon's Code, § 142 p. 77 (2-D, 1927 Acts, p. 141), hydroelectric power tax; Section 143, p. 77 (Section 2, Acts of 1927, p. 139), tax on railroads gross receipts; Section 145, p. 77 (2-B, 1927 Acts, p. 140), tax on telephone companies' gross receipts, amended February 2, 1937, p. 36, Act No. 58, Acts 1936–37, Sp.Sess.); Section 147 p. 82 (2-C, 1927 Acts, p. 140), gross receipt tax on express companies; Section 149, p. 84 (2-H, 1927 Acts, p. 142), tax on pullman cars; Schedule 91, p. 256 (2-E, 1927 Acts, p. 141),

tax on coal mines; Schedule 92, p. 257 (2-F, 1927 Acts, p..141), tax on mining iron ore; Chapter 7, Art. 13, p. 414 (2-J, 1927 Acts, p. 142), graduated tax on tobacco products; Chapter 3, Art. 13, p. 300, graduated tax on chain stores; Sales Tax (Act No. 126, p. 125, 1936–37 Spec.Sess.), Section 21, three-fourths net proceeds .(2-G Severance tax on mines and quarries); same, 2-A, 1927, p. 140, 2½% tax on gross receipts on telephone companies (changed to pole-mile basis in 1935 general fund).

The Act of July 10, 1935, Acts of Alabama, 1935, pp. 256–574, provided for the general revenues of the State of Alabama and for the tax in question (p. 508), as we have indicated at the outset, and for the educational trust funds as stated in Section 405, p. 573, set out above. That is to say, the statute challenged (Article 13, Chapter 4, p. 508 et seq., General Acts 1935) and that defining the educational trust fund in application of moneys therefrom is that of administration of government, and not as of an elementary right of life, liberty and property. It follows that the constitutionality of the gasoline tax, and its application by school boards and to the agencies of the state must be beyond a reasonable doubt contrary to the provisions of organic law to be null and void.

. We, therefore, hold that the provisions of the Constitution do not prevent the announcement here of like result indicated in State Tax Commission of Alabama v. County Board of Education of Jefferson County, 235 Ala. 388, 179 So. 197, and we concur in the statement made in the last cited authority, that the logic of the situation is that the Legislature declared for maintenance of the school system with its several provisions out of its trust fund, and from unappropriated moneys from the general fund, and including the transportation system by motor bus on the highways, made appropriations for operation of same in all respects. The same Legislature enacted the tax statutes here challenged and required for certain of the sinking funds in the respects here pertinent, in compliance with Article 20a of the Constitution. Skinner's Constitution of Alabama, pp. 978, 979.

That is to say, as pointed out in State Tax Commission v. County Board of Education, supra, 179 So. 201: "Taxes are in the nature of fixed charges, first charges on funds in the hands of public authorities, as against other lawful charges wherein public authorities may exercise a discretion and judgment in the allocation of funds to accomplish the public purposes in hand. Jefferson County v. State, supra (223 Ala. 148, 170 So. 70); Brown, Treasurer v. Gay-Padgett Hdw. Co., 188 Ala. 423, 66 So. 161." [Parenthesis supplied].

The same Legislature that imposed the tax now challenged, made the appropriations as "of school funds which in large part constitute the funds in the hands of the county board of education from year to year. * * *" State Tax Commission v. County Board of Education, supra. It may be observed, further, that the statute objected to is "the statute * * * amended by express provisions that 'person' as defined in the act 'means and includes person, corporation, co-partnerships, companies, counties, municipal corporations, school boards, or agencies of the State.' General Acts 1935, § 348, schedule 156, p. 508." State Tax Comm. v. County Board of Education, supra.

It was further observed in the Jefferson County Case, supra, that "following this amendment, this court has held such excise tax a valid and lawful demand against a municipality, and also against a county, and a lawful charge on tax derived funds of such city or county, and subject to the control of their governing bodies for municipal or county purposes. City of Birmingham v. State, 233 Ala. 138, 170 So. 64; Jefferson County v. State, 233 Ala. 148, 170 So. 70."

In the recent case of .Gwin, White & Prince, Inc., v. Harold M. Henneford, Thomas S. Hedges and T. M. Jenner, Constituting the State of Washington Tax Commission, 59 S.Ct. 325, 83 L.Ed. ——, the Supreme Court of the United States made the following observation on privilege or excise taxes [page 327] : "It has often been recognized that 'even interstate business must pay its way' by bearing its share of local tax burdens, Postal Telegraph-Cable Co. v. Richmond, 249 U.S. 252, 259, 39 S. Ct. 265, 266, 63 L.Ed. 590, and that in consequence not every local tax laid upon gross receipts derived from participation in interstate commerce is forbidden. See Western Live Stock v. Bureau of Revenue, supra [303 U.S. 250], page 254 et seq., 58 S.Ct. [546] at page 548 [82 L.Ed. 823, 115 A.L.R. 944], and cases cited."

446

See, also, our recent cases National Linen Service Corp. v. State Tax Commission, ante, p. 360, 186 So. 478; Henry S. Long, et al., Members etc., v. Sherrill Terminal Co., etc., ante, p. 166, 187 So. 412.

So much for the nature and character of the excise or privilege tax levied under the general powers of government affected only by the provisions of the constitution to which we have adverted. At the risk of repetition, we conclude the subject by holding that the tax in question will not be defeated or declared null and void by the construction contended for by appellant under ·the several provisions of the state constitution we have heretofore discussed.

The result is that of affirmance of the money judgment of $15,225.88 in case No. 6 Div. 408, with legal interest from ·date of May 30, 1938; and of affirmance of the declaratory judgment entered in case No. 6 Div. 409.

The respective judgments of the circuit court are affirmed.

Affirmed.

All the Justices concur.

